Joshua Prince, Esq.
Prince Law Offices, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Attorney Id No. 306521
(610) 845-3803, ext 81114 (t)
(610) 845-3903 (f)
Joshua@PrinceLaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ALTON C. FRANKLIN,** | : | |
| Plaintiff | : | |
| | : | |
| **v.** | : | Civil Action #  `3:16-cv-36` |
| | : | |
| **LORETTA LYNCH,** | : | |
| Attorney General of the United States | : | |
| | : | |
| **THOMAS E. BRANDON,** | : | |
| Acting Director, Bureau of Alcohol, | : | |
| Tobacco, Firearms, and Explosives | : | |
| | : | |
| **JAMES B. COMEY,** | : | Complaint – Civil Rights |
| Director of the Federal Bureau of Investigation | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | |
| Defendants | : | |

**COMPLAINT**

COMES NOW Plaintiff Alton C. Franklin, by and through his attorney, Joshua Prince,

Esq., and Prince Law Offices, P.C., and complains of Defendants as follows:

**INTRODUCTION**

1. This is an action to uphold Plaintiff's right to keep and bear arms as guaranteed by the

Second Amendment to the United States Constitution.  This right "guarantee[s] the

individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008).

2. Defendants have collectively and individually prohibited a particular class of persons, including Plaintiff, from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms in the absence of due process.

3. Specifically, individuals, such as Plaintiff, who have been involuntarily committed pursuant to Section 302 of Pennsylvania's Mental Health and Procedures Act ["MHPA"], 50 P.S. § 7101, et seq., are committed and putatively stripped of their Second Amendments in the absence of a hearing, a right to counsel, a right to confront witnesses, a right to submit evidence and a right to a neutral arbiter.

4. Additionally, Defendants have collectively and individually prohibited a particular class of persons from obtaining, possessing, keeping, bearing, or otherwise utilizing firearms in a personal capacity, while simultaneously allowing that particular class of persons to obtain, possess, keep, bear, and utilize arms in their professional capacity as law enforcement officers, pursuant to 18 U.S.C. § 925(a)(1).

5. Specifically, individuals, such as Plaintiff, who have been involuntarily committed pursuant to the MHPA are putatively prohibited from acquiring, possessing, keeping, bearing, or utilizing a firearm in their private capacity.  However, that prohibition is removed if the firearm is "sold . . . or issued . . . for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof."  18 U.S.C. § 925(a)(1).

6. Thus, Defendants and the State receives a benefit from Plaintiff, while at the same time depriving the Plaintiff of his individual right to keep and bear arms for the protection of his "hearth and home."

7. Furthermore, those individuals, such as Plaintiff, are not afforded any means to demonstrate – following their release from commitment – their fitness to restore their Second Amendment right to acquire, possess, keep, bear, or otherwise utilize a firearm in his or her private capacity, or for the defense of his or her hearth and home.

8. That current putative prohibition on involuntarily committed individuals keeping, bearing, acquiring, possessing, or utilizing a firearm, especially in the absence of due process, infringes upon the individual's right to keep and bear arms, as it arbitrarily denies the entire class of persons without regard to the particular circumstances of that individual's case.

9. Thus, numerous mentally sound, stable, trustworthy individuals, such as Plaintiff, are denied their Constitutional right to keep and bear arms in defense of their home, in the absence of due process, based on one isolated involuntary commitment, with no regard or consideration of the particular circumstances surrounding the individual.

## PARTIES

10. Plaintiff Alton C. Franklin ["Mr. Franklin"] is a natural person, and a citizen of Henderson, Kentucky and the United States.  Mr. Franklin holds a Bachelor's Degree in Criminal Justice, is a Certified Nursing Assistant, and a certified paralegal.  Mr. Franklin was involuntarily committed on September 22, 2002 in Bedford County, Pennsylvania, in the absence of due process.  It is Mr. Franklin's present intention and desire to purchase

and possess a handgun and long gun for self-defense within his home.  Pennsylvania's courts have determined that Mr. Franklin may possess a firearm under Pennsylvania law; thus, he is prevented from doing so solely by Defendants' active enforcement of the policies complained of in this action.  Pursuant to Federal law, however, Mr. Franklin may possess a firearm within his official duties as an employee for the Federal government, state government, and/or municipal government.

11.   Defendant Loretta Lynch ["Attorney General" or "Lynch"] is being sued in her official capacity as the Attorney General of the United States.  As Attorney General, Defendant Lynch is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States.  She is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action.  As Attorney General, Defendant Lynch is ultimately responsible for supervising the functions and actions of the United States Department of Justice, including the ATF, which is an arm of the Department of Justice.

12.   Defendant Thomas E. Brandon ["ATF Director" or "Brandon"] is being sued in his official capacity as Acting Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ["ATF"].  ATF is responsible for, *inter alia*, regulating and licensing the sale, possession, transfer, and transportation of firearms and ammunition in interstate commerce.  As Acting Director of ATF, Defendant Brandon responsible for the creation, implementation, execution, and administration of the laws, regulations, customs, practices, and policies of the United States.  He is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action.

13.   Defendant James B. Comey ["FBI Director" or "Comey"] is being sued in his official capacity as Director of the Federal Bureau of Investigation ["FBI"].  FBI is the agency responsible for performing background checks for federal, state, and local law enforcement authorities via the National Instant Check System ["NICS"].  FBI is responsible for maintaining the NICS database reflecting that individuals are prohibited from acquiring, possessing, and utilizing a firearm.  FBI sets forth policies, procedures, regulations, and customs relating to NICS and background checks for firearm purchasers.  As Director of the FBI, Defendant Comey is responsible for the execution of administration of these policies, procedures, regulations, and customs, including those complained of in this action.

14.   Defendant United States of America ["United States"] is a proper party in this action pursuant to 5 U.S.C. § 702.

## JURISDICTION AND VENUE

15.   This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

16.   This action seeks relief pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, 2412, and 5 U.S.C. § 702.  Therefore, jurisdiction is founded on 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

17.   This Court has authority to award costs and attorney fees pursuant to 28 U.S.C. § 2412 and 18 U.S.C. § 925a.

18. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), as a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

## STATEMENT OF FACTS RELATING TO PLAINTIFF

19. The foregoing paragraphs are incorporated herein as if set forth in full.

20. Mr. Franklin:

    a. Is over the age of 21;

    b. Is not under indictment;

    c. Has never been convicted of a felony, or misdemeanor crime of domestic violence;

    d. Has never been convicted of a crime punishable by more than one (1) year;

    e. Is not a fugitive from justice;

    f. Is not an unlawful user of, or addicted to, any controlled substance;

    g. Has not been adjudicated a mental defective;

    h. Has not been discharged from the Armed Forces under dishonorable conditions;

    i. Has never renounced his citizenship;

    j. Is not the subject of a restraining order relating to an intimate partner;

    k. Has been fully released or discharged from all mandatory treatment, supervision, or monitoring;

    l. Has been found by a court to no longer suffer from the mental health condition that was the basis of the commitment, or has otherwise been found to be rehabilitated through a procedure available by law.

21. Mr. Franklin, at the age of 26, was involuntarily committed, in the absence of all due process, based simply off a doctor's signature, on September 22, 2002 in Bedford County, Pennsylvania.

22. During his commitment he was:

    a.  Never advised of the right to have an attorney;

    b.  Never provided an attorney;

    c.  Never provided a right to confront witnesses;

    d.  Never provided and opportunity to offer witnesses;

    e.  Never provided an opportunity to challenge evidence;

    f.  Never provided any opportunity to submit evidence;

    g.  Never provided a hearing;

    h.  Never provided a neutral arbiter;

    i.  Never provided a verbatim transcript or full record of the commitment proceedings.

23. Although post-commitment Mr. Franklin was employed as a corrections officer, where he possessed and utilized a Beretta PX 4 Storm .40 caliber handgun, he was recently terminated due, in significant part, to Defendants' actions and interpretations of federal law.

24. As a result of his isolated involuntary commitment in 2006, in the absence of due process, Defendants contend that Plaintiff Franklin lost his private capacity firearm rights by operation of 18 Pa.C.S. § 6105(c)(4) and 18 U.S.C.§ 922(g)(4), which both prohibit an individual who has been involuntarily committed to a mental institution from being able to own, possess, use, or purchase a firearm or ammunition; however, pursuant to 18

U.S.C. § 925(a)(1), federal law includes an exception for state actors, including police officers, in their official capacity.

25.   On July 1, 2014, Mr. Franklin filed a petition for relief with the Pennsylvania Court of Common Pleas for Bedford County.

26.   After a hearing, Judge Travis Livengood found that Mr. Franklin "may possess a firearm without presenting a danger to himself or others," that he "no longer suffers from the mental health condition that was the basis of the original civil commitment," that he "has been fully released and discharged from all treatment, supervision, and monitoring from said commitment and has been since September 2002," and that his "involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective.'" *See* Order of Court, October 14, 2014, attached hereto and incorporated herein as Exhibit A.

27.   Judge Livengood went on to order that Mr. Franklin "is hereby fully relieved of any and all firearms disabilities imposed in the Commonwealth of Pennsylvania deriving from his civil commitment . . . in September 2002," and that his "civil commitment . . . in September 2002 shall not be a basis of a denial of a Pennsylvania license to carry firearms." *See* Exhibit A.

28.   Judge Livengood also ordered the Pennsylvania State Police ["PSP"] to remove the indications of firearms prohibition from the Pennsylvania Instant Check System ["PICS"] and directed the PSP to notify FBI that Mr. Franklin "is no longer prohibited from possessing firearms under Pennsylvania law as it relates to his civil commitment." *Id.*

29. Unfortunately, by the time the Court issued its Order, Mr. Franklin had already been terminated from his employment.

30. ATF Philadelphia Division Counsel Kevin White previously confirmed to the undersigned that there is currently no mechanism available in Pennsylvania or under federal law for Mr. Franklin to obtain relief from his federal disability, as a result of his isolated commitment, which occurred in the absence of all due process.

31. Mr. Franklin is a responsible, law-abiding citizen with no history of violent behavior or other conduct that would suggest he poses any threat or danger.

32. As the Court of Common Pleas found, Mr. Franklin is not a danger to himself or others.

33. Mr. Franklin desires and intends, in his private capacity, to purchase, possess and utilize firearms for self-defense and for defense of his family, including within his home.

34. Mr. Franklin has abstained from attempting to purchase a firearm, even after the Court Order of October 14, 2014, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to 18 U.S.C. § 922(g)(4), instigated and directed by Defendants, should he attempt to purchase or possess a firearm, based on the statements of ATF Counsel White.

35. Mr. Franklin is unwilling to purchase, possess or utilize a firearm, in his private capacity, because doing so would subject him to arrest, prosecution, fine and incarceration, at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(4), based on the statements of ATF Counsel White.

36. Therefore, Mr. Franklin cannot possess a firearm within his own home for the protection of himself or his family, the core of the fundamental right guaranteed by the Second Amendment. *See District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

## STATUTES AND REGULATIONS

37.   18 U.S.C. § 922(g) provides the following:

(g) It shall be unlawful for any person –

…

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

…

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

38.   ATF previously held that a commitment, pursuant to Section 302 of the MHPA, was insufficient for purposes of triggering a disability, pursuant to 18 U.S.C. § 922(g)(4). A copy of the determination is attached hereto and incorporated herein as Exhibit B.

39.   Although neither 18 U.S.C. § 922(g)(4), inclusive of the promulgated regulations related thereto, nor Section 302 of the MHPA have been amended, ATF now contends that a Section 302 commitment triggers a federal disability pursuant to 18 U.S.C. § 922(g)(4).

40.   18 U.S.C. § 925(a) provides an exception to the firearms disability of Section 922(g)(4), where the individual is benefitting, in his/her official capacity, the U.S. or state government: [1]

The provisions of this chapter, except for sections 922(d)(9) and 922(g)(9) and provisions relating to firearms subject to the prohibitions of section 922(p), shall not apply with respect to the transportation, shipment, receipt, possession, or importation of any firearm or ammunition imported for, sold or shipped to, or issued for the use of, the United States or any department or agency thereof or any State or any department, agency, or political subdivision thereof.

---

[1] Plaintiff Franklin fell under this exception, when he was operating in his official capacity as a county correctional officer for the State of Kentucky.

41.  Further, under 18 U.S.C. § 925(c), an individual prohibited from acquiring a firearm may

apply to the Attorney General for relief from the prohibition, which the Attorney General

may grant if "the applicant will not be likely to act in a manner dangerous to public safety

and that the granting of the relief would not be contrary to the public interest."

42.  The ATF has promulgated a rule detailing the manner that a review under 18 U.S.C. §

925(c) may be sought. 27 C.F.R. § 478.144.

43.  However, notwithstanding the provisions of 18 U.S.C. § 925(c) and 27 C.F.R.§ 478.144

(2011), which purport to provide a means to request relief for an individual prohibited

from acquiring a firearm, the United States Congress has specifically denied any funding

"to investigate or act upon applications for relief from Federal firearms disabilities under

18 U.S.C. 925(c)." The Consolidated and Further Continuing Appropriations Act, 2015,

Pub. L. No. 113–235, 128 Stat. 2130.

44.  Due to the above lack of funding, ATF does not in fact provide any review under 18

U.S.C. § 925(c) to provide relief from a federal prohibition on purchasing, possessing or

utilizing a firearm.

45.  Because Defendant ATF does not provide a review for relief from a federal prohibition

on acquiring or possessing a firearm, Plaintiff Franklin cannot avail himself of any

federal procedure to vindicate his Second Amendment rights on the basis that he does not

present a threat to himself or others.

46.  Under the NICS Improvement Amendments Act of 2007 ["NIAA"], Congress provided

an alternate route for relief from a federal prohibition on acquiring a firearm in which the

various states may elect to provide an ATF-approved program to review, approve, or

deny applications for such relief. NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 121 Stat. 2559, 2569-70.

47.   To date, Defendants have failed to approve Pennsylvania's relief program, and therefore contend that Plaintiff cannot avail himself of any state or federal procedure providing relief from a federal prohibition on purchasing, possessing or utilizing a firearm in his private capacity.

48.   ATF Philadelphia Division Counsel Kevin White previously confirmed to Attorney Joshua Prince of the undersigned's law firm that there is currently no mechanism available in Pennsylvania or under federal law for Mr. Franklin to obtain relief from his federal disability, as a result of his commitment.


## COUNT I: NIAA
### (Plaintiff v. All Defendants)

49.   The foregoing paragraphs are hereby incorporated herein as if set forth in full.

50.   Under the NICS Improvement Amendments Act of 2007 ["NIAA"], Congress provided an alternate route for relief from a federal prohibition on acquiring a firearm in which the various states may elect to provide an ATF-approved program to review, approve, or deny applications for such relief.


### Section 101(c)

51.   Upon information and belief, Defendants, in violation of Section 101(c) of NIAA, have included Mr. Franklin's involuntary commitment in the NICS database.

52.   Specifically, pursuant to Section 101(c) of NIAA

(1) IN GENERAL .—No department or agency of the Federal Government may provide to the Attorney General any record of an adjudication related to the mental health of a person or any commitment of a person to a mental institution if—

    (A) the adjudication or commitment, respectively, has been set aside or expunged, or the person has otherwise been fully released or discharged from all mandatory treatment, supervision, or monitoring;

    (B) the person has been found by a court, board, commission, or other lawful authority to no longer suffer from the mental health condition that was the basis of the adjudication or commitment, respectively, or has otherwise been found to be rehabilitated through any procedure available under law; or

    (C) the adjudication or commitment, respectively, is based solely on a medical finding of disability, without an opportunity for a hearing by a court, board, commission, or other lawful authority, and the person has not been adjudicated as a mental defective consistent with section 922(g)(4) of title 18, United States Code, except that nothing in this section or any other provision of law shall prevent a Federal department or agency from providing to the Attorney General any record demonstrating that a person was adjudicated to be not guilty by reason of insanity, or based on lack of mental responsibility, or found incompetent to stand trial, in any criminal case or under the Uniform Code of Military Justice.

53.    During the House debate relating to the implementation of NIAA, Representative John Dingell declared:

> Mr. Speaker…"Adjudication" implies a decision by a court or similar body—not just a doctor's notes on a patient's charts. Even the regulations of the Bureau of Alcohol, Tobacco, Firearms and Explosives makes that clear. They define an "adjudication" as a "court, board, commission or other lawful authority." They have never treated doctors as "lawful authority" for this purpose; clearly what they had in mind were legally empowered bodies such as judges, or the county mental health boards that are in place in some states to *make decisions at hearings* with respect to mental illness.

153 Cong. Rec. H6344 (June 13, 2007)(emphasis added).

54.  As reflected in the Order issued by Judge Livengood, Mr. Franklin "no longer suffers from the mental health condition that was the basis of the original civil commitment." *See* Exhibit A, ¶ 2.

55.  Further, the Order declares that Mr. Franklin "has been fully released and discharged from all treatment, supervision, and monitoring from said commitment and has been since September 2002." *See* Exhibit A, ¶ 3.

56.  Additionally, the Order declares that Mr. Franklin's "involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective.'" *See* Exhibit A, ¶ 4.

57.  In violation of Section 101(c), Defendants have provided to the Attorney General and had included in the NICS database the medical records relating to Mr. Franklin's commitment.

*Section 105*

58.  To date, Defendants have failed to approve Pennsylvania's relief program, 18 Pa.C.S. § 6105(f), even though it meets the criteria set-forth by the Congress.

59.  Specifically, pursuant to Section 105 of NIAA,

   (a)   A relief from disabilities program is implemented by a State in accordance with this section if the program –

      (1)  permits a person who, pursuant to State law, has been adjudicated as described in subsection (g)(4) of section 922 of title 18, United States Code, or has been committed to a mental institution, to apply to the State for relief from disabilities imposes by subsections (d)(4) and (g)(4) of such section by reason of the adjudication or commitment;

      (2)  provides that a State court, board, commission, or other lawful authority

shall grant relief, pursuant to State law and in accordance with the principles of due process, if the circumstances regarding disabilities referenced in paragraph (1), and the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of relief would not be contrary to the public interest; and

(3) permits a person whose application for the relief is denied to file a petition with the State court of appropriate jurisdiction for a de novo judicial review of the denial.

(b) If, under a State relief from disabilities program implemented in accordance with this section, an application for relief referred to in subsection (a)(1) of this section is granted with respect to an adjudication or a commitment to a mental institution or based upon a removal of a record under Section 102(c)(1)(B), the adjudication or commitment, as the case may be, is deemed not to have occurred for purposes of subsections (d)(4) and (g)(4) of section 922 of title 18, United States Code.

60. Unlike Section 103(c), which provides for grants to states where the relief program is "to the satisfaction of the Attorney General," nothing within Section 105, or referenced therein, conditions the effectiveness of State-granted relief upon the approval of the Attorney General or ATF.

61. Pennsylvania's relief from disabilities program, pursuant to 18 Pa.C.S. § 6105(f)(1), provides that an individual who, pursuant to section 6105(c)(4), has "been adjudicated as an incompetent or who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302, 303 or 304" of Pennsylvania's Mental Health and Procedures Act, may petition the court for relief and that "the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person."

62. The Superior Court recently acknowledged that *de novo* review was required of mental health commitment challenges and trial court proceedings related thereto. *See*,

*Commonwealth v. Current*, 2016 Pa. Super. Unpub. LEXIS 5, *3; *In re Vencil*, 2015 PA Super 157, 120 A.3d 1028 (2015).

63. The relief programs ATF purported to "approve" include a number of programs,[2] which are substantially similar to Pennsylvania's relief program, resulting in any denial or refusal of Pennsylvania's program being arbitrary and capricious.

64. Accordingly, Pennsylvania's relief program meets the criteria of NIAA; however, Defendants have refused to accept Mr. Franklin's relief Order and contend that since they have not approved Pennsylvania's relief program, the Order is insufficient.

65. Specifically, in relation to this matter, Judge Travis Livengood found that Mr. Franklin "may possess a firearm without presenting a danger to himself or others," that he "no longer suffers from the mental health condition that was the basis of the original civil commitment," that he "has been fully released and discharged from all treatment, supervision, and monitoring from said commitment and has been since September 2002," and that his "involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective.'" *See* Exhibit A.

66. Therefore, as a direct and proximate result of the above infringement and impermissible burden on Mr. Franklin's Second Amendment rights, Mr. Franklin has suffered – and continues to suffer – from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

---

[2] Wisconsin - Wis. Stat. § 941.29(8); Virginia - Va. Code Ann. § 18.2-308.1:3(B); Oregon - OR. Law Ch. 859 § 300, O.R.S. § 161.387, OR. OAR 859-300-0090(1); Florida - Fla. Stat. § 790.065.

67. Mr. Franklin has incurred attorney fees and costs as a direct result of prosecuting the present court action.

## COUNT II: FIFTH AMENDMENT DUE PROCESS
## FACIAL AND *AS-APPLIED* VIOLATIONS [3]
### (*Plaintiff v. All Defendants*)

68. The foregoing paragraphs are incorporated herein as if set forth in full.

69. Defendants Lynch, Brandon, Comey, and United States have, together and separately, violated Mr. Franklin's Fifth Amendment right to due process by denying him the ability to purchase and possess a firearm, as a result of his involuntary commitment, when Mr. Franklin had no opportunity to be heard by a court, either before or subsequent to his deprivation, and no federally-acceptable standard of proof was utilized.

70. As the United States District Court for the Middle District of Pennsylvania held in *Dixon v. Attorney Gen. of Pa.*, 325 F. Supp. 966, 974 (M.D. Pa. 1971) in relation to Pennsylvania's previous mental health commitment statute, Section 404, the Commonwealth *must*:

   a. Inform the individual of "his right to counsel and an attorney shall be appointed to represent him unless he can afford to retain an attorney himself;"

   b. The individual must be provided "independent expert examination and assistance in preparation for the hearing, through court appointment where the subject cannot afford to retain these services;"

---

[3] Plaintiff does not, in this action, contend that all of Section 302 must be ruled unconstitutional; rather, Plaintiff contends that as a result of the lack of due process provided, Section 302 is insufficient to putatively strip an individual of a core constitutional right, including the Right to Keep and Bear Arms.

    c.   Provided "a full hearing at which he shall have the right to present evidence in his own behalf, to subpoena witnesses and documents, and to confront and cross-examine all witnesses against him;" and,

    d.   "There shall be a verbatim transcript and full record made of the commitment proceedings."

71.   50 P.S. § 7302 lacks all due process protections, as it does not provide the individual with:

    a.   A hearing;

    b.   Notice of the right to an attorney;

    c.   An attorney;

    d.   An opportunity to be heard;

    e.   An opportunity to confront witnesses;

    f.   An opportunity to submit evidence;

    g.   An opportunity to challenge evidence;

    h.   A neutral arbiter; or,

    i.   A verbatim transcript or full record of the commitment proceedings.

72.   In this matter, Mr. Franklin's commitment lacked the requisite due process protections, as acknowledged by the court Order (see, Exhibit A), as he was not provided:

    a.   A hearing;

    b.   Notice of the right to an attorney;

    c.   An attorney;

    d.   An opportunity to be heard;

    e.   An opportunity to confront witnesses;

    f.     An opportunity to submit evidence;

    g.    An opportunity to challenge evidence;

    h.    A neutral arbiter; or

    i.     A verbatim transcript or full record of the commitment proceedings.

73.    In relation to the standard of proof necessary for an involuntary commitment, in order to "meet due process demands, the process has to inform the factfinder that the proof must be greater than the preponderance-of-the-evidence standard applicable to other categories of civil cases." *Addington v. Texas*, 441 U.S. 418, 432-33 (1979).

74.    Pennsylvania's Mental Health Procedures Act ["MHPA"], 50 P.S. § 7101, *et seq.*, provides no standard of proof.

75.    Mr. Franklin was involuntarily committed pursuant to the MHPA, 50 P.S. § 7302, in the absence of any standard of proof.

76.    Thus, as a direct and proximate result of the above infringement and impermissible burden on Mr. Franklin's Fifth Amendment rights, Mr. Franklin suffers – and continues to suffer – from an unlawful deprivation of their fundamental constitutional rights to due process and to keep and bear arms.

77.    Mr. Franklin has incurred attorney fees and costs as a direct result of prosecuting the present court action.

### COUNT III: SECOND AMENDMENT *AS-APPLIED* VIOLATIONS
#### (*Plaintiff v. All Defendants*)

78.    The foregoing paragraphs are hereby incorporated herein as if set forth in full.

79.    The Second Amendment states that "the right of the people to keep and bear arms shall not be infringed."

80. The Supreme Court has held that the right to keep and bear arms is a fundamental right, the core of which is to allow individuals to keep arms in their own homes for self-defense.  *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008).

81. Defendants Lynch, Brandon, Comey, and the United States have, together and separately, violated Mr. Franklin's Second Amendment rights by denying him the ability to purchase and possess a firearm as a result of an involuntary commitment for which no adjudication by a court, board, or other lawful authority was ever entered.

82. In fact, the only adjudication regarding Mr. Franklin's involuntary commitment was a finding that he was *not* dangerous to himself or others, and that he *was* capable of safely possessing a firearm.  See Exhibit A.

83. Defendants' custom, practice, and policy of prohibiting individuals who have been involuntarily committed on a medical determination only without any opportunity for adjudication by a court, who are no longer committed or undergoing treatment, and who have been found not to present a danger to themselves or others, is an infringement and an impermissible burden on Mr. Franklin's right to keep and bear arms pursuant to the Second Amendment of the U.S. Constitution.

84. However, the current enforcement policies of Defendants prevent Mr. Franklin from legally purchasing or possessing a firearm.

85. Therefore, as a direct and proximate result of the above infringement and impermissible burden on Mr. Franklin's Second Amendment rights, Mr. Franklin has suffered – and continues to suffer – from an unlawful deprivation of his fundamental constitutional right to keep and bear arms.

86.  Mr. Franklin has incurred attorney fees and costs as a direct result of prosecuting the present court action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alton Franklin respectfully requests that this Honorable Court enter judgment in his favor and against Defendants, as follows:

a)  Declare that a valid Pennsylvania court order issued pursuant to 18 PA.C.S. § 6105(f) meets the criteria of Section 105 of NIAA;

b)  Declare that Defendants are prohibited from including Plaintiff's commitment in the NICS database, pursuant to Section 101(c) of NIAA, as he was found to no longer suffer from the mental health condition that was the basis for his commitments, was rehabilitated pursuant to Pennsylvania law, and that his involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective;'

c)  Declare that an involuntary commitment, pursuant to 50 P.S. § 7302, lacks the necessary due process protections and is therefore insufficient to strip an individual of his Second Amendment rights;

d)  Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiff's right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution;

e)  Declare that 18 U.S.C. § 922(g)(4), its derivative regulations, and all related laws, policies, and procedures violate Plaintiff's right to due process under the Due Process

Clause of the Fifth Amendment to the United States Constitution;

f) Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from refusing to accept a valid Pennsylvania court order, issued pursuant to 18 Pa.C.S. § 6105(f), as providing relief under NIAA;

g) Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from including any mental health record in the NICS database, where a Pennsylvania judge has found that the individual "no longer suffer[s] from the mental heath condition that was the basis of the adjudication or commitment" or where the individual has been "rehabilitated through any procedure available under the law," pursuant to Section 101(c) of NIAA;

h) Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing 18 U.S.C. § 922(g)(4) and all its derivative regulations, and all related laws, policies, and procedures that would impede or criminalize an individual's exercise of his right to keep and bear arms, as a result of an involuntary commitment, pursuant to 50 P.S. § 7302;

i) Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiff 18 U.S.C. § 922(g)(4) and all its derivative regulations, and all related laws, policies, and procedures that would impede or criminalize Plaintiff's exercise of his right to keep and bear arms;

j) Permanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Plaintiff 18

U.S.C. § 922(g)(4) and all its derivative regulations, and all related laws, policies, and procedures concerning Plaintiff's involuntary commitment pursuant to Pennsylvania's Mental Health Procedures Act;

k) Award Plaintiff costs and attorney fees and expenses to the extent permitted under 28 U.S.C. § 2412 and 18 U.S.C. § 925a; and

l) Grant any and all other equitable and/or legal remedies this Court may see fit.

Respectfully Submitted,

Joshua Prince, Esq.
Attorney Id. No. 306521
Prince Law Offices, P.C.
646 Lenape Rd
Bechtelsville, PA 19505
610-845-3803 ext 81114
610-845-3903 (fax)
Joshua@PrinceLaw.com

Attorney for Plaintiff