IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTON C. FRANKLIN, | ) | Case No. 3:16-cv-36 |
| | ) | |
| Plaintiff, | ) | JUDGE KIM R. GIBSON |
| | ) | |
| v. | ) | |
| | ) | |
| LORETTA LYNCH et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>MEMORANDUM OPINION</u>

Pending before the Court is Defendants' Partial Motion to Dismiss (ECF No. 5). For the reasons that follow, Defendants' Motion is **GRANTED**.

I.      **Background**[1]

Alton Franklin wants to buy a handgun and long gun for home self-defense. (ECF No. 3 ¶ 10.) But because Franklin was involuntarily committed in 2002, federal law prohibits him from possessing any firearm. He filed this case against the federal government, challenging that prohibition.

In September 2002, Franklin was involuntarily committed under Section 302 of Pennsylvania's Mental Health and Procedures Act ("MHPA") (50 Pa. Cons. Stat. § 7302). (*Id.* ¶¶ 3, 10.) Franklin's commitment was an isolated incident and was based on a doctor's signature. (*Id.* ¶¶ 9, 21.) The procedures to commit someone involuntarily under Section 302 are straightforward: if a doctor certifies that there is a need for a person's involuntary commitment, then a county administrator may issue a warrant for that person's involuntary

---

[1] The background facts are taken from Plaintiff's First Amended Complaint, which the court accepts as true for purposes of deciding the pending Partial Motion to Dismiss (ECF No. 5). *See, e.g., N.J. Carpenters & the Trs. Thereof v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014) (citation omitted).

commitment.  *See* 50 Pa. Cons. Stat. § 7302(a)(1).  Or, if a doctor observes conduct by a person which reasonably supports the conclusion that the person's involuntary commitment is needed, that doctor can arrange for commitment without obtaining a warrant.  *See* § 7302(a)(2).  Either way, involuntary commitment under Section 302 does not include such things as advising the patient they have the right to an attorney, an opportunity to challenge the evidence, a hearing, or a neutral factfinder.  Thus, Franklin's involuntary commitment did not include any of these things.  (ECF No. 3 ¶ 22.)

Under both federal and Pennsylvania law, Franklin's involuntary commitment disqualified him from owning a firearm.  *See* 18 U.S.C. § 922(g)(4) (barring anyone "who has been committed to a mental institution" from "possessing . . . any firearm"); 18 Pa. Cons. Stat. § 6105(c)(4) (barring anyone "who has been involuntarily committed to a mental institution for inpatient care and treatment under section 302 [of the MHPA]" from possessing any firearm). Pennsylvania law provides a procedure whereby people who are prohibited from owning a firearm under Pennsylvania law can challenge that prohibition.  *See* 18 Pa. Cons. Stat. § 6105(e)-(f); § 6105.1.  On July 1, 2014, Franklin filed a petition for relief from firearms disability with the Pennsylvania Court of Common Pleas of Bedford County pursuant to 18 Pa. Cons. Stat. § 6105(f)(1).  (*See* ECF No. 3 ¶ 25.)  A hearing was held on Franklin's petition, and on October 14, 2014, the Court of Common Pleas issued an order relieving Franklin of "any and all firearms disabilities imposed in the Commonwealth of Pennsylvania deriving from his civil commitment under 50 P.S. § 7302 in September 2002."  (ECF No. 3-1 at 4.)

The Court of Common Pleas found that Franklin (1) may possess a firearm without presenting a danger to himself or others; (2) no longer suffered from the mental-health

condition that was the basis of his involuntary commitment; (3) had been fully released and discharged from all treatment, supervision, and monitoring related to his involuntary commitment (and had been since September 2002); and (4) had not been adjudicated as a "mental defective." (*See id.* at 3.) The Court of Common Pleas also instructed the Pennsylvania State Police to notify the FBI that Franklin was no longer prohibited from possessing firearms under Pennsylvania law on the basis of his involuntary commitment. (*Id.* at 4.)

Although the order by the Court of Common Pleas relieved Franklin of the prohibition on owning firearms under Pennsylvania law, it did not affect his federal-law prohibition. And a Philadelphia Division Counsel of the Bureau of Alcohol, Tobacco, and Firearms and Explosives ("ATF") has informed Franklin's attorney that there is currently no procedure available under Pennsylvania or federal law to challenge the federal prohibition.[2] (ECF No. 3 ¶ 30.) Thus, Franklin brought this case against the Attorney General of the United States, the Acting Director of the ATF, the Director of the FBI, and the United States of America.

Franklin alleges four counts as grounds for relief. Specifically, he alleges violations of the NICS Improvement Amendments Act of 2007,[3] the Full Faith and Credit Clause of the United States Constitution, the Due Process Clause of the Fifth Amendment to the United States

---

[2] Federal law does contain a provision, codified at 18 U.S.C. § 925(c), equivalent to Pennsylvania's relief statute. Under § 925(c), a person prohibited from owning a firearm under federal law may apply to the Attorney General for relief. The ATF has promulgated a rule, 27 C.F.R. § 478.114, setting forth the procedures for such an application for relief. In practice, however, both 18 U.S.C. §925(c) and 27 C.F.R. § 478.114 are meaningless; Congress has denied any funding "to investigate or act upon applications for relief from Federal firearms disabilities under 18 U.S.C. 925(c)." Consolidated and Further Continuing Appropriations Act, 2015, Pub. L. No. 113-235, 128 Stat. 2130, 2187 (2015). Thus, 18 U.S.C. § 925(c) does not provide an actual avenue of relief.

[3] Pub L. No. 110-180, 121 Stat. 2559 (2008) (codified at 18 U.S.C. § 922 note).

Constitution, and the Second Amendment to the United States Constitution.  Franklin seeks a variety of declaratory and injunctive relief.  (*Id.* at 22-24.)

## II.      Jurisdiction & Venue

All of Franklin's claims arise under the Constitution and laws of the United States.  The Court therefore has jurisdiction over this case pursuant to 28 U.S.C. § 1331.  And because a substantial part of the events giving rise to Franklin's claims—namely, his involuntary commitment—occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III.     Standard of Review

Defendants have filed a partial motion to dismiss Franklin's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows a party to seek dismissal of a complaint or any portion of a complaint for failure to state a claim upon which relief can be granted.

The legal standard for a Rule 12(b)(6) challenge is well established.  In determining the sufficiency of a complaint, a district court must conduct a two-part analysis.  First, the court should separate the factual and legal elements of the claims.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Second, the court must determine whether the factual matters alleged are sufficient to establish that the plaintiff has a "plausible claim for relief."  *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  The complaint, however, need not include "detailed factual allegations."  *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The court must also accept as true all factual allegations in the complaint and construe all inferences gleaned therefrom in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). But "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, the complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir .2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has stated a "plausible claim for relief" is a context-specific inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). The record to consider in making this determination includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (emphasis omitted) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). If a claim is vulnerable to dismissal pursuant to Rule 12(b)(6), the district court must permit a curative amendment regardless of whether a plaintiff seeks leave to amend, unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citation omitted); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).

## IV.    Discussion

Defendants have moved to dismiss Franklin's claims under the NICS Improvement Amendments Act and the Full Faith and Credit Clause. Although Franklin's claim under the NICS Improvement Amendments Act is styled as a single count in his First Amended

Complaint, this claim actually consists of two subclaims; Franklin alleges violations of Section 101(c) and Section 105 of that Act.  (ECF No. 3 ¶¶ 49-67.)  Defendants argue that both subclaims should be dismissed because Sections 101(c) and 105 do not apply here.  And Defendants argue that Franklin's claim under the Full Faith and Credit Clause should be dismissed because there is no private right of action under that Clause.  Further, Defendants argue that even if Franklin's Full Faith and Credit Clause claim was a valid cause of action, it should be dismissed because it fails on its merits.

### A.    Claims under the NICS Improvement Amendments Act of 2007

In 1993, Congress enacted the Brady Handgun Violence Prevention Act,[4] which required the Attorney General to establish by November 30, 1998, the National Instant Criminal Background Check System ("NICS") for the purchase of firearms.  The Brady Act also requires that firearms dealers contact NICS to run a background check on prospective buyers before transferring firearms to those buyers.  18 U.S.C. § 922(t)(1)(A).  NICS became operational in November 1998 and is administered by the FBI under the supervision of the Attorney General of the United States.  28 C.F.R. § 25.1; *see also* National Instant Criminal Background, 63 Fed. Reg. 58303, 58303 (Oct. 30, 1998) (codified at 28 C.F.R. pt. 25).

In the wake of the 2007 mass shooting at the Virginia Polytechnic Institute and State University, Congress enacted the NICS Improvement Amendments Act ("NIAA").[5]  NIAA sought to improve the background-check system by facilitating access by the FBI of records relating to criminal history and mental health.  *See* NIAA § 2.  Employing established principles

---

[4] Pub. L. No. 103-159, 107 Stat. 1536 (1993) (codified at 18 U.S.C. § 921 et seq.).

[5] Pub L. No. 110-180, 121 Stat. 2559 (2008) (codified at 18 U.S.C. § 922 note).

of federalism, NIAA adopted a two-pronged approach.  First, NIAA imposed a requirement on federal departments and agencies to share relevant records with the Attorney General.  *See* NIAA § 101(a)-(b).  Second, NIAA authorized the issuance of federal grants to incentivize states to improve the quality of information they provide to NICS.  *See* NIAA § 103.  To be eligible for such a federal grant, a state must "certify, to the satisfaction of the Attorney General, that the State has implemented a relief from disabilities program in accordance with section 105 [of NIAA]."  NIAA § 103(c).

Franklin asserts that Defendants have violated Sections 101(c) and 105 of NIAA.  Specifically, Franklin alleges that Defendants' inclusion in the NICS database of a record related to his involuntary commitment violates Section 101(c)(1).   And Franklin asserts that Pennsylvania's relief-from-disabilities program meets the criteria in Section 105.  He argues that Defendants' refusal to remove his federal-law prohibition on owning firearms therefore violates Section 105.

1.      **Section 101(c)[6] Claim**

Defendants argue that Franklin's claim under Section 101(c) should be dismissed because that section is inapplicable.  They assert that Section 101(c) is directed to federal agencies that conduct mental-health adjudications or impose commitments.  Defendants contend that Section 101(c) therefore applies only when a federal agency possesses a mental-health record because that agency conducted the underlying adjudication or imposed the

---

[6] In his First Amended Complaint, Franklin asserts a claim under Section 101(c) but does not specify under which subsection the claim arises.  (*See* ECF No. 3 ¶¶ 51-57.)   Because the First Amended Complaint quotes Section 101(c)(1) and based on the Court's reading of the entirety of Section 101(c), the Court construes Franklin's claim as arising under Section 101(c)(1).

commitment.  According to Defendants, because the Commonwealth of Pennsylvania imposed Franklin's commitment—and not the federal government—Section 101(c) does not apply here.

Franklin counters that the plain language of Section 101(c) contradicts Defendants' interpretation.  He asserts that Section 101(c) applies regardless of the origins of the underlying record and regardless of what entity—federal or state—conducted the adjudication or imposed the commitment.  And Franklin argues that Section 101(c) applies here because the FBI provided the Attorney General with a record of Franklin's involuntary commitment.

Franklin is correct that the plain language of Section 101(c) contradicts Defendants' interpretation.  But this does not avail him.  Franklin has failed to state a claim under Section 101(c)(1) because no federal department or agency provided a record of his commitment to the Attorney General.

We start and end with the text of Section 101(c)(1), which states in relevant part:

> (1)  IN GENERAL.—No department or agency of the Federal Government may provide to the Attorney General any record of an adjudication related to the mental health of a person or any commitment of a person to a mental institution if—
>
> (A) the adjudication or commitment, respectively, has been set aside or expunged, or the person has otherwise been fully released or discharged from all mandatory treatment, supervision, or monitoring;
>
> (B) the person has been found by a court, board, commission, or other lawful authority to no longer suffer from the mental health condition that was the basis of the adjudication or commitment, respectively, or has otherwise been found to be rehabilitated through any procedure available under law; or
>
> (C) the adjudication or commitment, respectively, is based solely on a medical finding of disability, without an

> opportunity for a hearing by a court, board, commission, or other lawful authority, and the person has not been adjudicated as a mental defective consistent with section 922(g)(4) of title 18, United States Code, except that nothing in this section or any other provision of law shall prevent a Federal department or agency from providing to the Attorney General any record demonstrating that a person was adjudicated to be not guilty by reason of insanity, or based on lack of mental responsibility, or found incompetent to stand trial, in any criminal case or under the Uniform Code of Military Justice.

Thus, Section 101(c)(1) prohibits federal departments and agencies from providing to the Attorney General records related to a mental-health adjudication or commitment if any of the criteria in subsections (c)(1)(A), (c)(1)(B), or (c)(1)(C) are satisfied. But contrary to Defendants' assertion, the applicability of Section 101(c)(1) is not limited to situations where "the federal agency [was] the entity that conducted the adjudication or ordered the commitment to occur." (ECF No. 12 at 2.) Section 101(c)(1) contains no qualifier as to the type of federal departments or agencies it applies to—it simply states that "[n]o department or agency of the Federal Government" may provide qualifying mental-health records to the Attorney General. Without any limiting language, "no department or agency" means no department or agency.

Defendants rely on different subsections of Section 101(c) to read limiting language into Section 101(c)(1). This argument is unpersuasive. Yes, Section 101(c)(2)(A)(i) is directed to "[e]ach department or agency of the United States that makes any adjudication related to the mental health of a person or imposes any commitment to a mental institution." And Section 101(c)(3) applies to "any Federal department or agency that conducts proceedings to adjudicate a person as a mental defective." But the conclusion to draw from those sections is not that similar limiting language should be read into Section 101(c)(1). Rather, it is that the

omission of such limiting language in Section 101(c)(1) was intended.  *See, e.g., Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ⸺ U.S. ⸺, 133 S. Ct. 2517, 2528 (2013) (If statutory language is clear, "it would be improper to conclude that what Congress omitted from the statute is nevertheless within its scope." (citation omitted)); *Bates v. United States*, 522 U.S. 23, 29 (1997) ("[W]e ordinarily resist reading words or elements into a statute that do not appear on its face."); *Animal Legal Def Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1217 (11th Cir. 2015) ("Where Congress knows how to say something but chooses not to, its silence is controlling." (citation and quotation marks omitted)).

Defendants' reliance on subsequent legislative history for their interpretation of Section 101(c)(1) is also misplaced.  Defendants quote S. Rep. No. 110-473, at 83 (2008), but the quoted language discusses an agreement between the FBI and the U.S. Department of Veterans Affairs which resulted from a request by the Attorney General for NICS information.  As the two sentences immediately preceding the quote make clear, that request was made pursuant to sections of NIAA and the Brady Act which authorize the Attorney General to request NICS information from federal agencies.  The quoted language and the underlying request have no relation to Section 101(c).  And Defendants' citation of S. Rep. No. 111-282, at 8 (2010), also provides no support for their interpretation; the quoted language from that source speaks only to Section 101(c)(2)—and not to Section 101(c)(1).

It is also worth noting that Defendants' conception of Section 101(c)(1) creates a bizarre workaround to Section 101(c)(1)'s prohibition.  NIAA amended the Brady Act to require all federal departments and agencies to provide the Attorney General with relevant records (including     mental-health     records)     for     inclusion     in     the     background-check

system.  *See* NIAA § 101(a).  Under Defendants' interpretation of Section 101(c)(1), agencies that conduct mental-health adjudications or impose commitments are barred from providing qualifying mental-health records to the Attorney General.  But those agencies would not be barred under Section 101(c)(1) from providing the same records to, for instance, the Department of Agriculture—which presumably does not conduct mental-health adjudications or impose commitments.  And under Defendants' interpretation, the Department of Agriculture would also not be prohibited under Section 101(c)(1) from providing the Attorney General with those records.  In fact, once the Department of Agriculture received those records, it would be required by law to provide them to the Attorney General.  *See id.*  Defendants' conception of Section 101(c)(1) thus turns that section's prohibition into a procedural detour instead of a roadblock.  It seems implausible that Section 101(c)(1) was intended to function in such a manner.

In sum, Section 101(c)(1) applies to all federal departments and agencies.  And Section 101(c)(1)'s language is expansive; it prohibits federal departments and agencies from providing the Attorney General with "*any* [qualifying] record."  (emphasis added).  Section 101(c)(1) therefore applies regardless of whether the underlying record was the result of the agency's own adjudication or commitment.  Put simply, when any federal department or agency is in possession of any record related to a mental-health adjudication or commitment, and any of the criteria in subsections (c)(1)(A), (c)(1)(B), or (c)(1)(C) are satisfied, then the federal department or agency is prohibited from providing the Attorney General with that record.

Notwithstanding Section 101(c)(1)'s breadth, Franklin has failed to state a claim under Section 101(c)(1) because he has not alleged that a federal department or agency provided a

record of his commitment to the Attorney General.  Franklin contends that the "FBI is providing [his mental-health record] to the Attorney General by adding the record to NICS."  (ECF No. 10 at 8 n.3.)  But the FBI does not "provide" the Attorney General with records within the meaning of Section 101(c)(1) because the FBI and the Attorney General are synonymous for purposes of the administration of NICS.  Thus, Franklin's claim under Section 101(c)(1) fails.

The statutory and regulatory scheme of NICS illustrates that the FBI and the Attorney General are synonymous for purposes of the administration of NICS.  Under the Brady Act, the Attorney General is charged with establishing NICS.  *See* Pub. L. No. 103-159, § 103, 107 Stat. 1536 (1993).  The Attorney General fulfills this statutory obligation by delegating the implementation and administration of NICS to the FBI.  *See* 28 C.F.R. § 25.3; *see also* National Instant Criminal Background, 63 Fed. Reg. 58303, 58303 (Oct. 30, 1998) (codified at 28 C.F.R. pt. 25).  By law, the Attorney General is the "head of the Department of Justice," 28 U.S.C. § 503, and the FBI is part of the Department of Justice, 28 U.S.C. § 531.  Furthermore, the Attorney General is authorized to delegate performance of official functions to other agencies of the Department of Justice.  28 U.S.C. § 510.  As Defendants point out in their Reply, NICS is "established at the FBI," is "based at the [FBI]," and its systems manager is the director of the FBI.  28 C.F.R. § 25.3(a)-(c).  And the FBI is "responsible for maintaining data integrity during all NICS operations that are managed and carried out by the FBI."  28 C.F.R. § 25.5.  After the FBI receives a record, there is thus no separate step where the FBI "provides" that record to the Attorney General.  As the agency responsible for NICS and tasked with its administration, it is the FBI which is provided information by other entities for inclusion into NICS.

Franklin has failed to state a claim under Section 101(c)(1) because that section has no application here.   Section 101(c)(1) prohibits federal agencies from providing the Attorney General—or, in practical terms, the FBI—with qualifying records.   Franklin has demonstrated that it would likely be impermissible for a federal agency to provide the FBI (or the Attorney General) with a record of his involuntary commitment.   But Section 101(c)(1) says nothing about states.   Here, it was the Commonwealth of Pennsylvania which provided the FBI with the record of Franklin's commitment.   Thus, Franklin has failed to state a claim under Section 101(c)(1).

### 2.       Section 105 Claim

Under NIAA, "the Attorney General shall make grants to States" to incentivize states to improve the quality of information they provide to NICS.   *See* NIAA § 103.   To be eligible for such a federal grant, a state must "certify, to the satisfaction of the Attorney General, that the State has implemented a relief from disabilities program in accordance with section 105 [of NIAA]."   NIAA § 103(c).   Section 105(a) of NIAA provides that a state's disabilities-relief program is considered "implemented" if the program (1) allows a person who has been prohibited from owning firearms pursuant to 28 U.S.C. § 922(d)(4) or § 922(g)(4) to apply to the state for relief from the prohibition; (2) provides that a state court or other lawful authority "shall grant the relief . . . if the circumstances regarding the disabilities . . . and the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest"; and (3) permits a person whose relief application is denied to "file a petition with the State court of appropriate jurisdiction for a de novo judicial review of the denial."   Further, Section 105(b)

states that if relief is granted to a person under a qualifying disabilities-relief program, the underlying adjudication or commitment is "deemed not to have occurred" for purposes of 28 U.S.C. § 922(d)(4) and § 922(g)(4).

Franklin asserts that Pennsylvania's disabilities-relief program, codified at 18 Pa. Cons. Stat. § 6105(f)(1), meets the criteria of Section 105. According to Franklin, Defendants' refusal to approve Pennsylvania's disabilities-relief program or accept the order by the Court of Common Pleas relieving his state-law disability therefore violates Section 105. And Franklin alleges that Defendants have approved substantially similar disabilities-relief programs by other states.

Defendants have moved to dismiss Franklin's claim under Section 105. In support, they argue that Pennsylvania's disabilities-relief program does not satisfy Section 105 because Pennsylvania's program does not specify the factors that the state court must consider in making its determination and does not require the state court to make the necessary specific findings.

Defendants are correct; Pennsylvania's disabilities-relief program does not satisfy Section 105. Section 105(a) provides specific criteria that a state's disabilities-relief program must satisfy in order to qualify under that section. Relevant here is Section 105(a)(2), which provides that a disabilities-relief program qualifies if it:

> provides that a State court, board, commission, or other lawful authority shall grant the relief, pursuant to State law and in accordance with the principles of due process, if the circumstances regarding the disabilities referred to in paragraph (1), and the person's record and reputation, are such that the person will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest;

Thus, in order to qualify, a state's program must instruct the reviewing court to consider the circumstances regarding the disabilities as well as the person's record and reputation. These factors must be considered in making two determinations: (1) that the person will not be likely to act in a manner dangerous to public safety, and (2) that the granting of the relief would not be contrary to the public interest.

Pennsylvania's disabilities-relief program falls short on some of these requirements. 18 Pa. Cons. Stat. § 6105(f)(1) provides as follows:

> Upon application to the court of common pleas under this subsection by an applicant subject to the prohibitions under subsection (c)(4), the court may grant such relief as it deems appropriate if the court determines that the applicant may possess a firearm without risk to the applicant or any other person.

Pennsylvania's program does not require a court to consider the circumstances regarding the disabilities or the person's record and reputation. And the court does not need to determine that the granting of relief would not be contrary to the public interest. Instead, Pennsylvania's disabilities-relief program requires only that the court "determine that the applicant may possess a firearm without risk to the applicant or any other person." § 6105(f)(1).

Further, it is irrelevant that Defendants have approved substantially similar disabilities-relief programs by other states. Nothing in Section 105 makes the effectiveness of a state's disabilities-relief program contingent on Defendants' approval. Thus, the fact that Defendants have "approved" similar disabilities-relief programs by other states is of no consequence; the only question is whether Pennsylvania's program satisfies Section 105. It does not.

Because Pennsylvania's program does not conform to Section 105, Franklin has failed to state a claim under that section. Section 105(a) is explicit in its criteria. Pennsylvania's program

does not comply with those criteria, and therefore does not qualify as a disabilities-relief program for purposes of Section 105.  As a result, Defendants are under no obligation to accept pursuant to Section 105(b) the Court of Common Pleas' order relieving Franklin of his disability.  Franklin has therefore failed to state a claim under Section 105.

**B.      Full Faith and Credit Clause Claim**

The last claim to discuss is Franklin's claim under the Full Faith and Credit Clause of the United States Constitution.  Although styled as a constitutional claim, Franklin relies also on the federal statute which implements the Full Faith and Credit Clause, namely 28 U.S.C. § 1738.  Franklin asserts that Defendants' refusal to accept the order by the Court of Common Pleas as a basis to relieve him of his federal firearms disability violates the Full Faith and Credit Clause and 28 U.S.C. § 1738.

Defendants argue that Franklin's claim under the Full Faith and Credit Clause must be dismissed because there is no private right of action under that clause or under 28 U.S.C. § 1738.  Further, Defendants assert that even if Franklin's Full Faith and Credit Clause claim arose under another federal statute, it should be dismissed because it fails on its merits.

Defendants are correct; there is no private right of action under the Full Faith and Credit Clause or under 28 U.S.C. § 1738.  *See, e.g.*, *Minnesota v. Northern Securities Co.*, 194 U.S. 48, 72 (1904); *Thompson v. Thompson*, 798 F.2d 1547, 1555 (9th Cir. 1986) ("The Supreme Court held long ago that the Full Faith and Credit Clause was not a source of federal jurisdiction." (citing *Northern Securities*, 194 U.S. at 72)).  In the absence of a private right of action, Franklin has failed to state a valid claim.  *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 276 (2002).

Furthermore, even if Franklin had a private right of action, neither the Full Faith and Credit Clause nor 28 U.S.C. § 1738 entitle him to the relief he seeks.  The Full Faith and Credit Clause to the United States Constitution provides:

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State.  And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S. Const. art. IV, § 1.  Pursuant to that Clause, Congress has prescribed the following:

> The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.
>
> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

28 U.S.C. § 1738.  Thus, the Full Faith and Credit Clause requires each state to recognize and enforce valid judgments rendered by the courts of other states.  As the Supreme Court has explained,

> [t]he very purpose of the full-faith and credit clause was to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin.

*Milwaukee County. v. M.E. White Co.*, 296 U.S. 268, 276-77 (1935).

But the Full Faith and Credit Clause is not implicated in this case. The order by the Court of Common Pleas states that Franklin is relieved of his state-law disability, and instructs the Pennsylvania State Police to "notify the FBI that [Franklin] is no longer prohibited from possessing firearms under Pennsylvania law as it relates to his civil commitment under 50 P.S. § 7302 in September 2002." (ECF No. 3-1 at 4.) The order does not instruct the Defendants to relieve Franklin of his federal-law prohibition.[7] And the order does not expunge Franklin's involuntary commitment—it merely states that his commitment will not be the basis for denying him a firearm under state law. Thus, Defendants are not refusing to recognize or enforce the order by the Court of Common Pleas; the order simply does not apply to them. Accordingly, Franklin's claim under the Full Faith and Credit Clause must be dismissed.

### C.      Leave to Amend

Although the Court will grant Defendants' Partial Motion to Dismiss (ECF No. 5), the Court will allow Franklin to amend his complaint to state alternative counts under NIAA. When a district court dismisses one or more claims pursuant to Rule 12(b)(6), the court must allow the plaintiff the opportunity to amend his complaint unless amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236 (citation omitted); *see also Shane*, 213 F.3d at 115. Here, for the reasons discussed above, Franklin has failed to state a viable claim under Sections 101(c)(1) and 105 of NIAA. But Franklin may be able to state a claim under Section

---

[7] Nor could it. *See, e.g., TransAmerica Assurance Corp. v. Settlement Capital Corp.*, 489 F.3d 256, 262 (6th Cir. 2007) (citing cases) (sovereign immunity barred state-court decision ordering federal government to take governmental action).

101(b)(2)(B).[8]  And Section 101(a) of NIAA, which amended Section 103(e)(1) of the Brady Act, includes language which may also lend itself to a viable claim.  Thus, the Court will grant Franklin leave to file an amended complaint.

As for Franklin's claim under the Full Faith and Credit Clause, the Court finds that amendment on that claim would be futile.  Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted."  *Alvin v. Suzuki*, 227 F. 3d 107, 121 (3d Cir. 2000).  A district court may therefore "properly deny leave to amend where the amendment would not withstand a motion to dismiss."  *Centifanti v. Nix*, 865 F. 2d 1422, 1431 (3d Cir. 1989).  Because the Court finds that amendment of Franklin's claim under the Full Faith and Credit Clause would be futile, leave to amend is denied on that claim.  Franklin's amendments, if any, are therefore to be limited to claims under NIAA.

## V.      Conclusion

For the foregoing reasons, Defendants' Partial Motion to Dismiss (ECF No. 5) is **GRANTED**.  A corresponding Order follows.

---

[8] Section 101(b)(2)(B) instructs the Attorney General to "provide for the timely removal and destruction of obsolete and erroneous names and information from the National Instant Criminal Background Check System."

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALTON C. FRANKLIN, | ) | Case No. 3:16-cv-36 |
| | ) | |
| Plaintiff, | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| v. | ) | |
| | ) | |
| LORETTA LYNCH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**NOW**, this 18th day of November 2016, upon consideration of Defendants' Partial Motion to Dismiss (ECF No. 5) and for the reasons set forth in the Memorandum Opinion accompanying this Order, it is **HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (ECF No. 5) is **GRANTED**. Plaintiff's claims under the NICS Improvement Amendments Act of 2007 (Count I) are dismissed without prejudice. Plaintiff's claim under the Full Faith and Credit Clause (Count II) is dismissed with prejudice.

It is **FURTHER ORDERED** that Plaintiff is granted leave to file an amended complaint. If Plaintiff chooses to file an amended complaint, he shall do so **within 21 days of issuance of this Order**. Plaintiff's amendments, if any, are to be limited to claims under the NICS Improvement Amendments Act of 2007, Pub L. No. 110-180, 121 Stat. 2559 (2008) (codified at 18 U.S.C. § 922 note).

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE