IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALTON C. FRANKLIN,** | ) | **Case No. 3:16-cv-36** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFFERSON B. SESSIONS, III,** *Attorney* | ) | |
| *General of the United States;* **THOMAS E.** | ) | |
| **BRANDON,** *Acting Director, Bureau of* | ) | |
| *Alcohol, Tobacco, Firearms, and* | ) | |
| *Explosives;* **CHRISTOPHER A. WRAY,** | ) | |
| *Director of the Federal Bureau of* | ) | |
| *Investigation;* **and THE UNITED STATES** | ) | |
| **OF AMERICA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION[1]

### I. Introduction

Presently pending before the Court are the parties' cross-motions for summary judgment.

(ECF Nos. 31, 36.) Defendants Attorney General Jefferson B. Sessions, III, Acting Director Thomas

E. Brandon, Director Christopher A. Wray, and the United States of America move for summary

judgment on all currently pending counts[2] of the Second Amended Complaint. (*See* ECF No. 34

at 9.) Plaintiff Alton C. Franklin ("Mr. Franklin") likewise moves for summary judgment on all

---

[1] The Court notes that, pursuant to Rule 25(d), Attorney General Jefferson B. Sessions, III and Director Christopher A. Wray are automatically substituted for now-former Attorney General Loretta Lynch and now-former Director James B. Comey. *See* Fed. R. Civ. P. 25(d).

[2] As admitted by Mr. Franklin in his Second Amended Complaint, following the Court's Memorandum Opinion and Order of November 18, 2016 (ECF No. 23) that decided Defendants' Partial Motion to Dismiss (ECF No. 5), the only counts currently pending before the Court are Count II (alleging violations of the NICS Improvement Amendments Act), Count IV (alleging facial and as-applied due process violations of the Fifth Amendment), and Count V (alleging an as-applied violation of the Second Amendment). (*See* ECF No. 26 at 12 n.3, 19 n.7.)

remaining counts of the Second Amended Complaint. (*See generally* ECF No. 40.) These motions have been fully briefed and are ripe for disposition. (*See* ECF Nos. 31-43, 47-52.)

This case arises from Defendants' determination that Mr. Franklin's less-than-24-hour involuntary stay in a hospital for an involuntary emergency mental health examination pursuant to Section 302 of the Pennsylvania Mental Health Procedures Act ("Section 302 of the MHPA"), 50 Pa. Stat. and Cons. Stat. Ann. § 7302, resulted in a complete prohibition of Mr. Franklin's ability to ever legally acquire, possess, or use a firearm in his private capacity for the purposes of federal law, namely for the purposes of 18 U.S.C. § 922(g)(4) ("Section 922(g)(4)"). Mr. Franklin challenges Defendants' position on numerous grounds—on most of which the Court will not now offer an opinion. However, the Court is persuaded that, by its own terms, Section 922(g)(4) does not restrict Mr. Franklin's ability to possess firearms based on a brief emergency mental health examination pursuant to Section 302 of the MPHA that was justified by only the *ex parte* decisions of a police officer, an unspecified official in the county administrator's office, and a single physician.

Section 922(g)(4) bars firearms possession for only "any person . . . who has been adjudicated as a mental defective or who has been committed to a mental institution." 18 U.S.C. § 922(g)(4). Under the undisputed material facts presented to this Court, Mr. Franklin is not such a person. Therefore, similar to the United States Court of Appeals for the First Circuit in *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012), this Court concludes that Mr. Franklin's right to acquire, possess, and use firearms is unaffected by Section 922(g)(4) because Mr. Franklin was not "adjudicated as a mental defective" or "committed to a mental institution." 18 U.S.C. § 922(g)(4).

This Court offers no opinion on any of the remaining claims or arguments of the parties, including, *inter alia*, alleged violations of Mr. Franklin's rights under the Due Process Clause of the Fifth Amendment and the Second Amendment. Rather, the undisputed material facts before this Court show that, by its plain terms and under the canon of constitutional avoidance, Section 922(g)(4) simply does not provide for a restriction of Mr. Franklin's ability to acquire, possess, or use firearms.

For the reasons that follow, Plaintiff's Motion for Summary Judgment (ECF No. 36) is **GRANTED** only as to the inapplicability of the restrictions of Section 922(g)(4) to Mr. Franklin. Otherwise, the parties' cross-motions for summary judgment (ECF Nos. 31, 36) are **DENIED AS MOOT** at this time.

## II. Jurisdiction and Venue

All of Mr. Franklin's claims arise under the Constitution and laws of the United States. The Court, therefore, has jurisdiction over this case pursuant to 28 U.S.C. § 1331. And, because a substantial part of the events giving rise to Mr. Franklin's claims—namely, his emergency mental health examination—occurred in the Western District of Pennsylvania, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III. Procedural History

Mr. Franklin initiated this action by filing his Complaint on February 3, 2016 (ECF No. 1), which he followed with his First Amended Complaint shortly thereafter on March 15, 2016. (ECF No. 3.) Mr. Franklin's First Amended Complaint alleged four counts against all Defendants: (1) two separate violations of the NICS Improvement Amendments Act ("NIAA"), (2) a violation of the Full Faith and Credit Clause of the United States Constitution, (3) a violation of the Due

-3-

Process Clause of the Fifth Amendment, and (4) a violation of the Second Amendment. (ECF No. 3.)

On April 11, 2016, Defendants filed their Partial Motion to Dismiss. (ECF No. 5.) By Memorandum Opinion and Order of November 18, 2016, the Court dismissed Count I and Count II of the Amended Complaint. *See Franklin v. Lynch*, No. 3:16-CV-36, 2016 WL 6879265 (W.D. Pa. Nov. 21, 2016). The Court granted Mr. Franklin leave to replead his claim under Section 101 of the NIAA, which Mr. Franklin did in his Second Amended Complaint filed on November 30, 2016. (ECF No. 26.)

Mr. Franklin's Second Amended Complaint added some additional content and reorganized its prior claims. (*See* ECF No. 26.) The Second Amended Complaint is organized into five counts: (1) a violation of Section 101(c) and Section 105 of the NIAA; (2) a violation of Section 101(a)(4)(D) and Section 101(b)(2)(B) of the NIAA; (3) a violation of the Full Faith and Credit Clause of the United States Constitution; (4) a violation of Franklin's Fifth Amendment right to due process; and (5) a violation of the right to keep and bear arms under the Second Amendment. (*Id.* at ¶¶ 49-109.) However, Mr. Franklin concedes that Count I and Count III of the Second Amended Complaint were dismissed by the Court's Memorandum Opinion and Order of November 18, 2016 (ECF No. 23) and explains that he included those two counts only "to preserve the issue for appeal, should it become necessary." (See ECF No. 26 at 12 n.3, 19 n.7.) Mr. Franklin's request for relief is extensive, featuring various forms of declaratory and injunctive relief and attorney fees and costs. (*Id.* at 26-29.)

Most pertinent here, Defendants filed their Motion for Summary Judgment on January 31, 2017. (ECF No. 31.) Mr. Franklin responded with his own Motion for Summary Judgment on

March 2, 2017. (ECF No. 36.) All briefing and responses to these two motions concluded on April 14, 2017. (*See* ECF Nos. 31-43, 47-52.)

## IV. Factual History

The following facts are undisputed unless otherwise noted.[3]

The present case arises from Mr. Franklin's involuntary stay in two Pennsylvania hospitals for an emergency mental health examination, in accordance with Section 302 of the MPHA. (ECF No. 35 ¶ 1; ECF No. 43 ¶ 1; ECF No. 42 ¶ 1; ECF No. 50 ¶ 1.) On September 22, 2002, Mr. Franklin arrived at a local police station in Bedford, Pennsylvania with approximately 20 cuts on his arms. (ECF No. 35 ¶¶ 2-4; ECF No. 43 ¶¶ 2-4; ECF No. 42 ¶¶ 1, 3; ECF No. 50 ¶¶ 1, 3.) These lacerations resulted from a "drinking game" in which Mr. Franklin, who was distraught from a recent breakup, and a friend would hit the other person with a butter knife during the course of a card game. (ECF No. 35 ¶¶ 2-4; ECF No. 43 ¶¶ 2-4; ECF No. 42 ¶¶ 1, 3; ECF No. 50 ¶¶ 1, 3.)

Upon arrival at the police station, Mr. Franklin spoke with Officer Chris Simons ("Officer Simons") and said that he "need[ed] to talk to someone." (ECF No. 35 ¶ 2; ECF No. 43 ¶ 2; ECF No. 42 ¶ 4; ECF No. 50 ¶ 4.) Officer Simons noted that Mr. Franklin "appear[ed] distraught from a recent break-up in a relationship" and "appear[ed] to be delusional," at which point Officer Simons completed "an application for involuntary commitment." (ECF No. 35 ¶¶ 3, 5; ECF No.

---

[3] The Court derives these facts from a combination of Plaintiff's Concise Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (ECF No. 42), Defendants' Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (ECF No. 35), Plaintiff's Response to Defendants' Concise Statement of Undisputed Material Facts in Support of Defendants' Motion for Summary Judgment (ECF No. 43), and Defendants' Response to Plaintiff's Concise Statement of Undisputed Material Facts in Support of Plaintiff's Motion for Summary Judgment (ECF No. 50).

-5-

43 ¶¶ 3, 5; ECF No. 42 ¶ 4; ECF No. 50 ¶ 4.) By completing the application, Officer Simons attested that Mr. Franklin was "severely mentally disabled" and "pose[d] a clear and present danger of harm to others or to himself." (ECF No. 35 ¶ 5; ECF No. 43 ¶ 5.) Officer Simons's application indicated that Mr. Franklin had "[s]ubstantially mutilated [himself] or attempted to mutilate [himself] substantially and that there is [a] reasonable probability of mutilation unless adequate treatment is afforded." (ECF No. 35 ¶ 6; ECF No. 43 ¶ 6.) Officer Simons's application further stated that Mr. Franklin:

> has acted in such manner as to evidence that [he] would be unable, without care, supervision, and the continued assistance of others, to satisfy [his] need for nourishment, personal or medical care, shelter, or self-protection and safety, and that there is a reasonable probability that death, serious bodily injury or serious physical debilitation would ensue within 30 days unless adequate treatment were afforded under the act[.]

(ECF No. 35 ¶ 6; ECF No. 43 ¶ 6.)

James W. Redmond, "an official in the county administrator's office,"[4] reviewed Officer Simons's application and completed a warrant for Mr. Franklin to be admitted to a medical facility for treatment for up to 120 hours. (ECF No. 35 ¶ 8; ECF No. 43 ¶ 8.) Officer Simons then transported Mr. Franklin to UPMC Bedford Memorial Hospital ("UPMC Bedford"), where Franklin was involuntarily admitted for a mental health examination at approximately 1:50 a.m. (ECF No. 35 ¶ 10; ECF No. 43 ¶ 10; ECF No. 42 ¶¶ 4-5; ECF No. 50 ¶¶ 4-5.)

Mr. Franklin's treating physician, Dr. Christine M. Pluto ("Dr. Pluto") observed Mr. Franklin's lacerated arms, opined that Franklin "is severely mentally disabled and in need of treatment," and added that "[Mr. Franklin] should be admitted to a facility designated by the

---

[4] Neither party specifies James W. Redmond's position within the county administrator's office.

County Administrator for a period not to exceed 120 hours." (ECF No. 35 ¶ 10; ECF No. 43 ¶ 10.) Dr. Pluto diagnosed Mr. Franklin with "acute psychosis" and Mr. Franklin was transferred to Somerset Hospital at approximately 4:00 a.m. on September 22, 2002. (ECF No. 35 ¶¶ 10-11; ECF No. 43 ¶¶ 10-11; ECF No. 42 ¶ 6; ECF No. 50 ¶ 6.) Mr. Franklin was released at an unspecified time later that same day, i.e., September 22, 2002, with a total hospital stay of less than 24 hours. (ECF No. 42 ¶¶ 1, 6; ECF No. 50 ¶¶ 1, 6.)

In the following years, Mr. Franklin obtained a Bachelor's Degree in Criminal Justice, a paralegal certification, and became a Certified Nursing Assistant. (ECF No. 42 ¶ 10; ECF No. 50 ¶ 10.) Mr. Franklin became a Corrections Officer in the State of Kentucky—a job in which he was authorized to possess a handgun while in his official capacity pursuant to 18 U.S.C. § 925(a)(1). (ECF No. 42 ¶¶ 11, 14; ECF No. 50 ¶¶ 11, 14.) Mr. Franklin has since been terminated from that position. (ECF No. 42 ¶ 11; ECF No. 50 ¶ 11.) The termination of Mr. Franklin's employment as a Corrections Officer in Kentucky was, at least, in part due to Defendants' actions and interpretations of law because the correctional facility required that Mr. Franklin take his firearm home at night.[5] (ECF No. 42 ¶ 11; ECF No. 50 ¶ 11.)

On March 11, 2013, Mr. Franklin was informed that he was prohibited from possessing a firearm in a private capacity after he challenged the determination by the FBI National Instant Check System ("NICS") that he was prohibited from purchasing a firearm. (ECF No. 42 ¶ 12; ECF No. 50 ¶ 12.) Defendants contend that Mr. Franklin lost his private capacity firearm rights by

---

[5] Defendants purport to dispute that Mr. Franklin was terminated in part due to their interpretation and application of 18 U.S.C. § 922(g)(4). (ECF No. 50 ¶ 11; ECF No. 49 at 7 n.7.) However, Defendants' cite to nothing in the record to dispute this fact. (*See* ECF No. 50 ¶ 11; ECF No. 49 at 7 n.7.) The Court does, however, note the use of the modifier "in part." (*See* ECF No. 50 ¶ 11.)

-7-

operation of 18 Pa. Stat. and Cons. Stat. Ann. § 6105(c)(4) and 18 U.S.C. § 922(g)(4).[6] (ECF No. 42 ¶ 13; ECF No. 50 ¶ 13.)

On July 1, 2015, Mr. Franklin petitioned the Bedford County Court of Common Pleas for relief pursuant to 18 Pa. Stat. and Cons. Stat. Ann. § 6105(f). (ECF No. 42 ¶ 16; ECF No. 50 ¶ 16.) On October 14, 2014, the Honorable Travis Livengood ("Judge Livengood") issued an order finding that Mr. Franklin "may possess a firearm without presenting a danger to himself or others." (ECF No. 35 ¶ 13; ECF No. 43 ¶ 13; ECF No. 42 ¶ 16; ECF No. 50 ¶ 16.) Judge Livengood added that Mr. Franklin "no longer suffers from the mental health condition that was the basis of the original civil commitment," that Mr. Franklin was "fully released and discharged from all treatment, supervision, and monitoring from said commitment and has been since September 2002," and that Mr. Franklin's "involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective.'" (ECF No. 42 ¶ 16; ECF No. 50 ¶ 16.)[7] Lastly, Judge Livengood ordered that Mr. Franklin was "hereby fully relieved of any and all firearms disabilities imposed in the Commonwealth of Pennsylvania deriving from his civil commitment . . . in September 2002," and that this "civil commitment . . . in September 2002 shall not be a basis of a denial of a Pennsylvania license to carry firearms." (ECF No. 42 ¶ 17; ECF No. 50 ¶ 17.)

---

[6] Defendants do not dispute the operation of these statutes, but dispute this statement insofar as Defendants believe it constitutes legal conclusions. (ECF No. 50 ¶ 13.)

[7] Defendants do not dispute that Mr. Franklin received state relief from the order in question; however, Defendants contend that the facts presented here are immaterial to the outcome of the present suit. (ECF No. 50 ¶¶ 16-18.)

-8-

Despite receiving state relief, Mr. Franklin has refrained from purchasing, possessing and using firearms in his private capacity because he reasonably fears arrest, prosecution, incarceration, and fine for allegedly violating 18 U.S.C. § 922(g)(4). (ECF No. 42 ¶ 19; ECF No. 50 ¶ 19.) Confirming Defendants' position on this issue, Kevin White—Philadelphia Division Counsel for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF")—informed Mr. Franklin that, regardless of his receipt of state relief, Mr. Franklin remains prohibited under federal law from purchasing, possessing, and using firearms in his private capacity, but could continue to possess and use firearms in his official capacity as a state correctional officer. (ECF No. 42 ¶ 20; ECF No. 50 ¶ 20.) ATF Division Counsel White also stated that no mechanism for relief exists for Mr. Franklin for his federal prohibition of private firearm possession. (ECF No. 42 ¶ 20; ECF No. 50 ¶ 20.)

Mr. Franklin wishes to purchase both a handgun and a long gun for the purpose of defending himself, his home, and his family. (ECF No. 42 ¶ 23; ECF No. 50 ¶ 23.) Mr. Franklin is over the age of 21; not under indictment; has no record of felony or misdemeanor domestic violence; has never been convicted of a crime punishable by more than a year; is not a fugitive from justice; is not addicted to or using any controlled substance; has no history of being adjudicated a mental defective; has never been dishonorably discharged from the Armed Forces; has never renounced his citizenship; and is not the subject of a restraining order relating to an intimate partner. (ECF No. 42 ¶ 24; ECF No. 50 ¶ 24.) Mr. Franklin has never been involuntarily examined for any mental health purposes since the aforementioned involuntary emergency mental health examination on September 22, 2002. (ECF No. 42 ¶ 18; ECF No. 50 ¶ 18.)

## V.    Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than

a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI. Discussion

### A. The Court's Approach to the Issues Raised in the Parties' Cross-Motions for Summary Judgment

Mr. Franklin offers numerous challenges to the Defendants' position that Mr. Franklin cannot acquire, possess, or use a firearm in his private capacity, and both parties offer lengthy, well-reasoned arguments on the various issues raised in this case. (*See* ECF Nos. 34, 40, 41, 49, 52.) However, the Court will not now reach most of these issues because the claims raised by Mr. Franklin's Second Amended Complaint and the issues raised by the parties' briefs are properly—and more narrowly—resolved through the interpretation and application of Section 922(g)(4) to the undisputed material facts of this case and the procedures provided for by Section 302 of the MHPA.

While this narrow disposition of this matter leaves many of the specific, novel legal issues raised and argued by the parties undecided, the Court deems it inappropriate to adjudicate or opine on issues—regardless of their novelty—when the examination of such issues is not necessary to fully resolve the case before it.

Indeed, the United States Supreme Court and fundamental adjudicatory principles suggest that this Court "*should* forbear resolving this issue." *Camreta v. Greene*, 563 U.S. 693, 705 (2011). The "longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them." *Id.* (quoting *Lyng v. Northwest Indian Cemetery Protective Ass'n.*, 485 U.S. 439, 445 (1988)); *see also Ashwander v. TVA*, 297 U.S. 288, 346-47 (1936) (Brandeis, J., concurring). The "fundamental principle" of judicial restraint provides that courts should neither "anticipate a question of constitutional law in advance of the necessity of deciding it" nor "formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (quoting *Ashwander*, 297 U.S. at 346-47); *see also North Carolina v. Covington*, 137 S. Ct. 1624, 1626 (2017) (emphasizing "the need to act with proper judicial restraint").

Therefore, the Court concludes that it would be unnecessary, improper, and violative of the fundamental principle of judicial restraint to decide the Second Amendment, Fifth Amendment, and other statutory issues raised by the parties when this case can be fully and rightly decided without reaching these broader issues. The Court's holding regarding the inapplicability of Section 922(g)(4) restrictions to Mr. Franklin moots the other issues raised in this case and, thus, the Court does not decide or offer any opinion on them. The Court's holding in this case pertains only to an interpretation of Section 922(g)(4) and an application of Section 302 of the MHPA.

## B. The Meaning of Section 922(g)(4)

### 1. The Terms of the Statute and Definitions of the Relevant Regulations

The purported restriction of Mr. Franklin's ability to acquire, possess, and use firearms in

his personal capacity arises from Defendants' interpretation and application of Section 922(g)(4)

to Mr. Franklin. (*See* ECF No. 42 ¶¶ 19-22; ECF No. 50 ¶¶ 19-22.) Yet, Section 922(g)(4) provides

for no such restriction.

In relevant part, Section 922(g)(4) states:

"It shall be unlawful for any person . . . who has been *adjudicated* as a mental defective or who has been *committed* to a mental institution . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

18 U.S.C. § 922(g)(4) (emphasis added). The fundamental issue regarding the application of

Section 922(g)(4) to Mr. Franklin is whether he was ever "adjudicated as a mental defective" *or*

"committed to a mental institution." *Id.*

While some of these terms may have clear plain meanings, the Code of Federal

Regulations defines[8] the pertinent terms as follows:

**Adjudicated as a mental defective.**
(a) A determination by a court, board, commission, or other lawful authority that a person, as a result of marked subnormal intelligence, or mental illness, incompetency, condition, or disease:
(1) Is a danger to himself or to others; or
(2) Lacks the mental capacity to contract or manage his own affairs.
(b) The term shall include—

[8] In a section entitled "Meaning of Terms," the Code of Federal Regulations states:

When used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof, terms shall have the meanings ascribed in this section. Words in the plural form shall include the singular, and vice versa, and words importing the masculine gender shall include the feminine. The terms "includes" and "including" do not exclude other things not enumerated which are in the same general class or are otherwise within the scope thereof. Act. 18 U.S.C. Chapter 44.

27 C.F.R. § 478.11. Section 922(g)(4) is within Chapter 44 of Title 18 of the United States Code. *See* 18 U.S.C. § 922(g)(4).

(1) A finding of insanity by a court in a criminal case; and
(2) Those persons found incompetent to stand trial or found not guilty by reason of lack of mental responsibility pursuant to articles 50a and 72b of the Uniform Code of Military Justice, 10 U.S.C. 850a, 876b.

\*\*\*\*\*

**Committed to a mental institution.** A formal commitment of a person to a mental institution by a court, board, commission, or other lawful authority. The term includes a commitment to a mental institution involuntarily. The term includes commitment for mental defectiveness or mental illness. It also includes commitments for other reasons, such as for drug use. The term does not include a person in a mental institution for observation or a voluntary admission to a mental institution.

\*\*\*\*\*

**Mental institution.** Includes mental health facilities, mental hospitals, sanitariums, psychiatric facilities, and other facilities that provide diagnoses by licensed professionals of mental retardation or mental illness, including a psychiatric ward in a general hospital.

27 C.F.R. § 478.11.

In applying the terms of Section 922(g)(4), as defined by the Code of Federal Regulations, to Mr. Franklin's situation and Section 302 of the MHPA, it is clear that Section 922(g)(4)'s restrictions are inapplicable in the present case. Section 922(g)(4)'s restrictions would apply to Mr. Franklin in two situations: (1) if Mr. Franklin had been "adjudicated as a mental defective" *or* (2) if he had been "committed to a mental institution." 18 U.S.C. § 922(g)(4).

## 2. Mr. Franklin was Not "Adjudicated as a Mental Defective"

Looking at the first prong, Section 302 of the MHPA permitted Mr. Franklin to be submitted to a mental health examination for up to 120 hours based on the opinions of a single police officer, a single county officer with an unspecified position in the county administrator's

office, and a single treating physician—without the involvement of any judicial or quasi-judicial

decision-maker or any semblance of an adversarial proceeding. *See supra* Part IV. These

procedures provided for by Section 302 of the MHPA and that were applied to Mr. Franklin

scarcely constitute an "adjudication." The plain meaning of "adjudicated" connotes the

involvement of a judicial decision-maker, the resolution of a dispute after consideration of

argument by the parties involved, and a deliberative proceeding with some form of due process.[9]

*See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (construing statutory terms in accordance with their

ordinary or natural meaning in the absence of a statutory definition); *Asgrow Seed Co. v.

Winterboer*, 513 U.S. 179, 187 (1995); *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993).

Moreover, as cited in its entirety *supra* Part VI.B.2, the Code of Federal Regulation defines

"adjudicated" to mean a "determination by a court, board, commission, or other lawful

authority." 27 C.F.R. § 478.11. The first three types of "adjudicators" in this list are clearly not

implicated under the undisputed material facts of this case. The decision to submit Mr. Franklin

to a 120-hour involuntary mental health examination was made by a police officer, an unspecified

officer in the county administrator's office, and a physician—not a court, board, or commission.

Notably, courts, boards, and commissions all function in a neutral judicial or quasi-judicial role,[10]

---

[9] *See Adjudicate, Black's Law Dictionary* (10th ed. 2014) ("to rule judicially."); *Adjudication, Black's Law Dictionary* (10th ed. 2014) ("the legal process of resolving a dispute; the process of judicially deciding a case."); *Adjudicate, Merriam-Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/ adjudicate (last updated Dec. 7, 2017) ("to make an official decision about who is right in (a dispute)"; "to settle judicially"; "to act as judge."); *Adjudicate, Dictionary.com*, http://www.dictionary.com/browse/ adjudicate?s=t (last visited Dec. 15, 2017) ("to pronounce or decree by judicial sentence"; "to settle or determine (an issue or dispute) judicially.").

[10] *See F.D.I.C. v. Meyer*, 510 U.S. 471, 476 (1994) (construing statutory terms in accordance with its ordinary or natural meaning in the absence of a statutory definition); *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995); *Commisioner v. Soliman*, 506 U.S. 168, 174 (1993).

therein greatly differing from the *ex parte*, non-judicial procedures and non-judicial actors provided for by Section 302 of the MHPA. Moreover, nothing in the record before this Court suggests that Officer Simons, Mr. Redmond, and Dr. Pluto were members of or jointly comprised a board or commission, let alone a court. Thus, because Mr. Franklin was not "adjudicated as a mental defective" by a court, board, or commission, Section 922(g)(4) does not provide for a restriction of Mr. Franklin's ability to own a firearm based on a determination by one of these three "adjudicators."

The fourth and final "adjudicator" listed in 27 C.F.R. § 478.11 is an "other lawful authority." *Id.* The exact meaning and parameters of the term "other lawful authority" is less immediately apparent than that of a court, board, or commission. However, the Court finds that a police officer, unspecified county employee, and physician do not constitute "other lawful authority" for the purposes of Section 922(g)(4) and 27 C.F.R. § 478.11. While a police officer, an unspecified county employee, and a physician may be a lawful authority for the purposes of requiring an involuntary emergency mental health examination for up to 120 hours,[11] Section 922(g)(4) and 27 C.F.R. § 478.11 need not also view these individuals as "adjudicators" with the lawful authority to permanently restrict an enumerated constitutional right. Interpreting Section 922(g)(4) such that individual physicians and other non-neutral actors have lawful authority to wholly strip a person of their ability to a possess a firearm in perpetuity based on a non-

---

[11] *See Benn v. Universal Health System, Inc.*, 371 F.3d 165, 174 (3d Cir. 2004); *Doby v. DeCrescenzo*, 171 F.3d 858, 870 (3d Cir. 1999); *see also Project Release v. Prevost*, 722 F.2d 960, 974 (2d Cir. 1983); *Covell v. Smith*, Civil Action No. 95-501, 1996 WL 750033 (E.D. Pa. Dec. 30, 1996); *Luna v. Van Zandt*, 554 F. Supp. 68, 76 (S.D. Tex. 1982)

adversarial, *ex parte* decision would raise serious constitutional concerns with the statute, which the canon of constitutional avoidance requires the Court to avoid if possible. *See infra* Part VI.C.

Furthermore, under the long-accepted principle of *noscitur a sociis*, "words grouped in a list should be given related meaning." *Doley v. United Steelworkers of America*, 494 U.S. 26, 36 (1990); *see also Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995) (reading a statutory definition as limited by the first of several grouped words). In the relevant federal regulation, "other lawful authority" is the fourth and final item of a list that begins with "a court, board, [and] commission." 27 C.F.R. § 478.11. A police officer, an unspecified county employee, and a physician acting outside of any formalized, judicial or quasi-judicial proceeding is not comparable, equivalent, or sufficiently similar to a "court, board, [or] commission." *Id.* Construing "other lawful authority" in such a manner would be contrary and irreconcilable with the principle of *noscitur a sociis*. *See Doley*, 494 U.S. at 36; *Gustafson*, 513 U.S. at 575.

Accordingly, the Court rejects an interpretation of Section 922(g)(4) that construes the three individuals in this case as a "lawful authority" to permanently prohibit the possession of private firearms. An "adjudicat[ion] as a mental defective" under Section 922(g)(4) requires something more than two lay persons and a physician acting without any adversarial proceeding, without the opportunity to present any evidence by the party subject to the mental health examination, and without the involvement of any judicial or quasi-judicial decision-maker or processes. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678, 681-82 (6th Cir. 2016) (en banc) (stating that the federal regulations make it clear that Section 922(g)(4) "applies only to persons who are involuntarily committed by an appropriate *judicial authority* following due process

safeguards") (emphasis added). In sum, the procedures provided for by Section 302 of the MHPA simply do not constitute an "adjudication" for the purposes of Section 922(g)(4).[12]

### 3. Mr. Franklin was Not "Committed to a Mental Institution"

Looking at the second prong, Section 922(g)(4) provides for a restriction of a person's ability to possess a firearm when that person has been "committed to a mental institution." 18 U.S.C. § 922(g)(4). Under the undisputed material facts presented to this Court, Mr. Franklin was never committed to a mental institution.

Mr. Franklin was taken to UPMC Bedford and, then, transferred to Somerset Hospital for an emergency mental health examination that could last no longer than 120 hours under Section 302 of the MHPA. (ECF No. 35 ¶¶ 10-11; ECF No. 43 ¶¶ 10-11; ECF No. 41 ¶¶ 1, 6; ECF No. 50 ¶¶ 1, 6.) He was observed overnight and released less than 24 hours later with no further treatment. (ECF No. 35 ¶¶ 10-11; ECF No. 43 ¶¶ 10-11; ECF No. 41 ¶¶ 1, 6; ECF No. 50 ¶¶ 1, 6.) UPMC Bedford and Somerset Hospital clearly meet the definition of a mental institution provided for under Section 922(g)(4) by 27 C.F.R. § 478.11. *See supra* Part VI.B.1 (quoting the definition in its entirety from 27 C.F.R. § 478.11). However, Mr. Franklin was not "committed"

---

[12] Additionally, in revoking Mr. Franklin's state firearms disability, Judge Livengood found that Mr. Franklin's "involuntary confinement for evaluation and treatment was based solely on a medical finding of mental disability and not after hearing by a court, board, commission, or other authority and that Petitioner has not been adjudicated as a 'mental defective.'" (ECF No. 42 ¶ 16; ECF No. 50 ¶ 16.) Judge Livengood's finding is not binding on this Court; however, as discussed *supra* and *infra*, this Court agrees with Judge Livengood's conclusion. The Court also observes that, in Defendants' Response to Plaintiff's Statement of Material Facts, Defendants identify the entirety of paragraph 24 as "undisputed." *(See* ECF No. 50 ¶ 24.) Paragraph 24(g) of Plaintiff's Concise Statement of Undisputed Material Facts states that Mr. Franklin "has never been adjudicated a mental defective." (ECF No. 42 ¶ 24(g).) Despite this apparent admission that Mr. Franklin was never "adjudicated a mental defective," the Court, nevertheless, relies on the foregoing statutory interpretation and analysis because a fair reading of Defendants' Response to Plaintiff's Statement of Material Facts, Defendants' own Concise Statement of Undisputed Material Facts, and Defendants' briefs suggest that Defendants contest the position that Mr. Franklin was never "adjudicated a mental defective." *(See* ECF Nos. 34, 35, 49, 50.)

to UPMC Bedford or Somerset Hospital. The undisputed material facts fail to satisfy the definition provided by the relevant federal regulation in at least two regards.

First, this definition, which is quoted in its entirety *supra*, presupposes a formal commitment decision by a "court, board, commission, or other lawful authority." *Id.* As explained above, a valid "adjudicator" was not involved in Mr. Franklin's mandated mental health examination in the instant case. Thus, the definition of "committed to a mental institution" is not satisfied for the same reasons discussed *supra* Part VI.B.2.

Second, the relevant regulation expressly states that the term "committed to a mental institution . . . does not include a person in a mental institution for observation." *Id.*; *see also Rehlander*, 666 F.3d at 48-49 (distinguishing temporary, emergency hospitalizations from formal commitments); *United States v. Giardina*, 861 F.2d 1334, 1337 (5th Cir. 1988) (holding that there is nothing in 18 U.S.C. § 922(g) which indicates an intent to prohibit the possession of firearms by persons who had been hospitalized for observation and examination where they were found not to be mentally ill and were not committed); *United States v. Hansel*, 474 F.2d 1120, 1122–23 (8th Cir. 1973) (same).

Mr. Franklin's less-than-24-hour stay at UPMC Bedford and Somerset Hospital for an emergency mental health examination falls within this explicit exclusion. Even going beyond the specific facts of Mr. Franklin's situation, the terms of Section 302 of the MHPA describe mandated medical care of a temporary and observational nature. Section 302 of the MHPA provides only for involuntary medical treatment lasting up to 120 hours. *See* 50 Pa. Stat. and Cons. Stat. Ann. § 7302(d). And, this Pennsylvania statute, tellingly, never uses the term "commitment." *See id.* Instead, Section 302 of the MHPA consistently and uniformly uses the terms "involuntary

-19-

emergency examination and treatment" or "emergency examination." *Id.* By its own terms and effect, Section 302 of the MHPA does not provide for a commitment to a mental institution as defined by 27 C.F.R. § 478.11, nor did Mr. Franklin undergo a commitment to a mental institution for the purposes of Section 922(g)(4).[13]

## C. The Canon of Constitutional Avoidance

In addition to the foregoing reasons, any ambiguities in the meaning of Section 922(g)(4), including what constitutes an "adjudication as a mental defective" or "other lawful authority" are properly resolved such that Section 922(g)(4) does not restrict Mr. Franklin's ability to possess a firearm under the canon of constitutional avoidance.[14]

The canon of constitutional avoidance—also sometimes referred to as the doctrine of constitutional doubt—requires courts to construe statutes, "if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *Almendarez-*

---

[13] Relevant to both the issue of "adjudicat[ion] as a mental defective" and "commit[ment] to a mental institution," Lawrence L. Duchnowski, Special Agent in Charge of the Philadelphia-based ATF division, wrote an official opinion letter on September 4, 1998, analyzing whether Section 922(g)(4) prohibits "a person who had been involuntarily detained for an emergency mental health examination pursuant to 50 Pa. Cons. Stat. § 7302." (ECF No. 41, Ex. E.) In this letter, attached as an exhibit to Mr. Franklin's Motion for Summary Judgment, Special Agent Duchnowski writes, "A [sic] involuntary detention under 50 Pa. Cons. Sat. § 7302 does not constitute a commitment to a mental institution within the meaning of 27 C.F.R. § 178.11 [now § 478.11]. Section 7302 provides for temporary emergency measures and as such falls short of the 'formal commitment' described in section 178.11." (*Id.*) Special Agent Duchnowski further reasons that "the distinction between a detention under section 7302 and a commitment, which would meet the definition in 27 C.F.R. § 178.11 [now § 478.11], is clearer still" because Pennsylvania law provides for longer periods of commitment with a "a panoply of due process rights," including "counsel, notice, and hearing," for formal commitments under 50 Pa. Cons. Stat. §§ 7304 and 7305. (*Id.*) This Court agrees with Special Agent Duchnowski's analysis in his September 4, 1998 letter.

[14] The Court notes that the "canon of constitutional avoidance," while similar to the fundamental principle of judicial restraint, *see supra* Part VI.A, is a separate and distinct concept, which serves as a tool of statutory interpretation. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 516 (2009) ("The so-called canon of constitutional avoidance is an interpretive tool, counseling that ambiguous language be construed to avoid serious constitutional doubts.").

*Torres v. United States*, 523 U.S. 224, 237-38 (1998) (citing *United States v. Jin Fuey Moy*, 241 U.S. 394, 401 (1916)); *see also Jones v. United States*, 529 U.S. 848, 857 (2000); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question, although properly presented by the record, if there is also present some other ground upon which the case may be disposed of. . . . Thus, if a case can be decided upon two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter."). "[W]here an otherwise acceptable construction of a statute would raise serious constitutional problems," courts will construe the statute to avoid such problems "unless such construction is plainly contrary to the intent [of the legislature.]" *DeBartolo Corp. v. Florida Gulf Coast Trades Council*, 485 U.S. 568, 575 (1988). "'The elementary rule is that every reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Id.* (quoting *Hooper v. California*, 155 U.S. 648, 657 (1895)). "This approach not only reflects the prudential concern that constitutional issues not be needlessly confronted, but also recognizes that [legislatures,] like [the courts] are bound by and swear[] an oath to uphold the Constitution." *Id.; accord Burns v. United States*, 501 U.S. 129, 138 (1991); *Gollust v. Mendell*, 501 U.S. 115, 126 (1991).

This well-established[15] doctrine is implicated by Section 922(g)(4) and 27 C.F.R. § 478.11 because there may be multiple plausible interpretations of "adjudicated" and "other lawful

---

[15] *See Warger v. Shauers*, 125 S. Ct. 521, 529 (2014) (recognizing the canon of constitutional avoidance, but not applying the canon because there were not competing plausible interpretations); *Gonzales v. Carhart*, 550 U.S. 124, 153 (2007) (stating the basic rule for the canon of constitutional avoidance); *Clark v. Martinez*, 543 U.S. 371, 380-85 (2005) (citing cases); *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 78 (1994) (stating that it is incumbent upon a court to read a federal statute to eliminate serious constitutional doubts whenever such a reading is not plainly contrary to the intent of the legislature); *New Jersey Payphone Ass'n, Inc. v. Town of W. New York*, 299 F.3d 235, 248 (3d Cir. 2002) (Alito, J., concurring in judgment) ("It is well

authority." Some of these interpretations[16] pose serious constitutional problems, namely those interpretations that would permit Mr. Franklin and others' ability to acquire, possess, and use firearms to be restricted in perpetuity based on an involuntary emergency examination under Section 302 of the MHPA. While the Court does not offer any opinion as to the resolution of these issues, the Court cannot deny the serious constitutional doubts raised by the parties' arguments in the instant matter—both in regard to due process rights of the Fifth Amendment and the right to bear arms under the Second Amendment. The arguments raised in the parties' briefs, a "fractured vote" by the Third Circuit on a related issue,[17] and recent, disparate decisions by other district courts within the Third Circuit[18] amply demonstrate the seriousness of these constitutional concerns and the appropriateness of constitutional avoidance when a reasonable interpretation of Section 922(g)(4) avoids consideration of those weighty constitutional issues.

---

established that, when possible, federal courts should generally base their decisions on non-constitutional rather than constitutional grounds."); *Keyes v. Lynch*, 195 F. Supp. 3d 702, 709 (M.D. Pa. 2016) (Jones, J.) ("We shall begin with Plaintiffs' claims alleged in Count V and Mr. Yox's claim alleged in Count II, because the parties agree that if Plaintiffs succeed with these statutory claims, the Court should not reach the constitutional claims, based on the doctrine of constitutional avoidance."); *Project Vote v. Kelly*, 805 F. Supp. 2d 152, 167-68 (W.D. Pa. 2011) (Fischer, J.) (providing a discussion of the canon of constitutional avoidance in the interpretation of a Pennsylvania statute).

[16] For example, an interpretation that the term "other lawful authority" in 27 C.F.R. § 478.11 refers to any authority provided for by law, such as a physician under Section 302 of the MHPA.

[17] *See Binderup v. Attorney General of the United States*, 836 F.3d 336, 339 (3d Cir. 2016) (en banc) (describing the decision as a "fractured vote" with three opinions and two separate, overlapping majorities). The Third Circuit is not the only court of appeals to disagree on the underlying as-applied Second Amendment challenges. *See Tyler v. Hillsdale Cty. Sheriff's Dep't*, 837 F.3d 678 (6th Cir. 2016) (en banc) (featuring eight separate opinions and disagreeing with a prior decision by a three-judge panel).

[18] *Compare Jefferies v. Sessions*, Civil Action No. 17-2346, 2017 WL 4411044 (E.D. Pa. Oct. 3, 2017) (Kearney, J.) (denying the plaintiff's as-applied Second Amendment challenge to Section 922(g)(4)); *Beers v. Lynch*, No. 2:16-cv-6440 (E.D. Pa. Sept. 5, 2017) (Legrome, J.) (same); *Simpson v. Session*, Civil Action No. 16-1334, 2017 WL 1910141 (E.D. Pa. May 10, 2017) (Schmehl, J.) (same), *with Keyes v. Sessions*, 1:15-cv-457, 2017 WL 4552531 (M.D. Pa. Oct. 11, 2017) (Jones, J.) (holding that Section 922(g)(4), as applied to Michael Keyes, violated the Second Amendment); *Keyes v. Lynch*, 1:15-cv-457, 195 F. Supp. 3d 702 (M.D. Pa. 2016) (Jones, J.) (holding that Section 922(g)(4), as applied to Jonathan K. Yox, violated the Second Amendment).

This Court's interpretation of Section 922(g)(4)—i.e., the procedures of Section 302 of the MHPA as applied to Mr. Franklin do not constitute an adjudication that Mr. Franklin is "a mental defective" or a "commit[ment] to a mental institution," therein not implicating Section 922(g)(4)'s firearm restrictions—adheres to the canon of constitutional avoidance. As discussed in detail *supra* Part VI.B, the Court's interpretation is a reasonable interpretation based on the plain meaning of the terms of Section 922(g)(4) and the guidance provided by 27 C.F.R. § 478.11. This interpretation of Section 922(g)(4), in accord with the canon of constitutional avoidance, fully resolves[19] this matter while also avoiding the serious constitutional doubts raised by the parties' arguments and recently grappled with by at least four other district courts in the Third Circuit. *See* note 18.

While the other district courts in this Circuit that have faced similar issues decided the merits of the parties' constitutional claims, the parties in these other cases do not appear to have raised the issue of the applicability of Section 922(g)(4) restrictions to a person subjected to an "involuntary mental health examination" pursuant to Section 302 of the MHPA. *See* note 18. Accordingly, the opinions issued by the other district courts in this Circuit did not examine the preliminary applicability of Section 922(g)(4) to the plaintiffs in those cases, perform a statutory analysis of Section 922(g)(4), consider 27 C.F.R. § 487.11, or raise the canon of constitutional avoidance. *See* note 18. Therefore, despite this Court's different approach to resolving these

---

[19] Plaintiff's Reply Brief states that, if Mr. Franklin's ability to possess a firearm is not restricted under federal law, then the court "should not address his the [sic] NICS Improvement Amendments Act of 2007 . . . and Second Amendment *as-applied* challenges, since he would not be prohibited from owning and possessing firearms and ammunition." (ECF No. 52 at 5.) Thus, Mr. Franklin concedes that the Court's present disposition of this matter, which results in Mr. Franklin not being prohibited from possessing firearms and ammunition, constitutes a full resolution of Mr. Franklin's case.

constitutional challenges to the combination of Section 922(g)(4) and Section 302 of the MHPA from the other district courts of this Circuit and this Court's respect for the learned judges of the other district courts of this Circuit, this Court bases its present decision on its interpretation of Section 922(g)(4) as being inapplicable to Mr. Franklin—without reaching the constitutional issues raised by Mr. Franklin.

## D. The First Circuit's Decision in *United States v. Rehlander*

Although opinions issued by courts of appeals other than the United States Court of Appeal for the Third Circuit are obviously not binding precedent in this Circuit, this Court finds the unanimous panel decision of the United States Court of Appeals for the First Circuit in *United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012) to be persuasive, well-reasoned, and supported by authority. In *Rehlander*, the First Circuit faced a challenge similar to that raised by Mr. Franklin in the instant matter. *See Rehlander*, 666 F.3d at 46-47. The plaintiffs in *Rehlander*, Benjamin Small ("Mr. Small") and Nathan Rehlander ("Mr. Rehlander"), were both involuntary admitted to psychiatric hospital under Maine's "emergency procedure." *Id.* at 46 (citing Me. Rev. Stat. tit. 34-B, § 3863 (2011)). Mr. Small and Mr. Rehlander were later convicted for possessing firearms after having been "committed to a mental institution" in violation of Section 922(g)(4). *Id.* They challenged these convictions on various bases similar to those raised by Mr. Franklin, including a Second Amendment challenge under *District of Columbia v. Heller*, 554 U.S. 570 (2008). *See Rehlander*, 666 F.3d at 46-47.

The facts and underlying state laws in *Rehlander* are remarkably similar to the present case. As stated by the First Circuit:

Maine has two procedures for involuntary psychiatric hospitalization. Section 3863 provides for temporary hospitalization following ex parte procedures—that is to say, without an adversary proceeding. The procedures include an application by a health or law enforcement officer, a certifying medical examination by a medical practitioner, and an endorsement by a judge or justice of the peace confirming that these procedures have been followed. Me. Rev. Stat. tit. 34–B, § 3863(1)-(3).

For full-scale commitments (as opposed to temporary hospitalization), Maine requires a traditional adversary proceeding, Me. Rev. Stat. tit. 34–B, § 3864, culminating in a judicial determination as to whether the subject both is mentally ill and poses a danger to himself or others, *id.* § 3864(6). This procedure is described in the statute as a "commitment," not "emergency hospitalization," and one consequence is that under Maine law, a section 3864 commitment causes a loss of the right to possess firearms. Me. Rev. Stat. tit. 15, § 393(1)(E).

In May 1998, Small was twice hospitalized under section 3863—at the request of his mother and an emergency mental health worker, respectively—based on suicidal tendencies and other signs of mental illness. In March 2009, the police found Small in possession of an Astra .357 revolver. In April 2009, Small was again hospitalized under section 3863 and then committed on a longer-term basis under section 3864. Small was indicted in November 2009 for violation of section 922(g)(4), based solely on his May 1998 section 3863 hospitalizations and March 2009 possession.

In March 2007, Rehlander was involuntarily hospitalized under section 3863 at the request of a crisis clinician, also based primarily on suicidal impulses. After then submitting to voluntary hospitalization for a few days, Rehlander changed his mind, and in early April 2007 he was again involuntarily hospitalized under section 3863 at the request of hospital personnel. Section 3863 hospitalizations are subject to strict time limits, so the hospital applied for longer-term involuntary commitment under section 3864.

A full-scale section 3864 proceeding followed at the end of which the Maine state court ordered Rehlander discharged, concluding that at this point Rehlander needed treatment but did not pose a risk of serious harm. In December 2008, police responding to an assault complaint found Rehlander with a 9 mm. caliber pistol. Rehlander was indicted in September 2009 for violation of section 922(g)(4), based on his March and April 2007 section 3863 hospitalizations and December 2008 possession.

*Id.*

The factual similarities to Mr. Franklin's "involuntary mental health examination" and Mr. Small and Mr. Rehlander's "involuntary psychiatric hospitalization" are self-evident. *Compare* Part IV, *with Rehlander*, 666 F.3d at 46-47.

Moreover, the system of involuntary hospitalizations established by the legislatures of Pennsylvania and Maine are strikingly similar. Just as Maine law provides for a graduated series of involuntary admissions that first feature shorter emergency periods of hospitalization permitted by non-adversarial, *ex parte* procedures, followed by longer periods of involuntary hospitalization that require full judicial determinations, *see id.*, Pennsylvania law features the "involuntary emergency mental health examination" of Section 302 of the MHPA, which can last no longer than 120 hours and requires only an *ex parte* decision by only a physician or a warrant by a county administrator and a physician's authorization, followed by progressively longer involuntary treatments permitted by more extensive processes. *See* 50 Pa. Stat. and Cons. Stat. Ann. § 7302 (permitting "involuntary emergency examination and treatment" for up to 120 hours upon authorization of a physician or a warrant by a county administrator and authorization by a physician); 50 Pa. Stat. and Cons. Stat. Ann. § 7303 (permitting "an extended involuntary emergency treatment" not to exceed 20 days after notice, the right to counsel, and an adversarial hearing before a "judge or mental health review officer"; hearings before mental health review officers must be reviewed by a court of common pleas within 72 hours upon request); 50 Pa. Stat. and Cons. Stat. Ann. § 7304 (permitting "involuntary treatment" for up to 90 days after full judicial hearing, findings of fact, and court order; numerous statutory rights are afforded); 50 Pa. Stat. and Cons. Stat. Ann. § 7305 (permitting an extension of a Section 304 involuntary treatment based on similar procedures to Section 304).

The primary distinction between the Maine law at issue in *Rehlander* and Section 302 of the MHPA is that Maine law provides more robust procedural protections than Section 302 of the MHPA. Unlike Section 302 of the MHPA, which requires only the certification of a physician or a warrant issued by a county administrator, *see* 50 Pa. Stat. and Cons. Stat. Ann. § 7302(a), Maine law requires (1) an application by a health or law enforcement officer, (2) a certifying medical examination by a medical practitioner, and (3) an endorsement by a judge or justice of the peace confirming these procedures have been followed. *See Rehlander*, 666 F.3d at 46 (discussing Me. Rev. Stat. tit. 34-B, § 3863)).[20] In essence, Section 302 of the MHPA requires nothing more than a certification of a physician or warrant issued by a county administrator, but Maine law requires the involvement of three separate actors—one of whom is a judge.

Nevertheless, despite this more multi-tiered statutory structure and the mandated involvement of a judge, the First Circuit held that Maine law's *ex parte* involuntary psychiatric hospitalization procedures for temporary hospitalization did not meet the definition of Section 922(g)(4). *Id.* at 47 ("Thus, section 922(g)(4) does not bar firearms possession for those who are or were mentally ill and dangerous, but (pertinently) only for any person 'who has been adjudicated as a mental defective' or 'has been committed to a mental institution.' As we read section 922 in the light of the concerns already discussed, a temporary hospitalization under section 922 does not constitute a 'commitment' under section 922."). Likewise, this Court holds that Pennsylvania's procedures under Section 302 of the MHPA—which, unlike Maine law, do not

---

[20] The Court also observes that Maine law provides numerous other notice requirements, an initial time limit of 24 hours that can be extended for 48 hours under certain conditions, and other procedural distinctions from the Pennsylvania law. *See* Me. Rev. Stat. tit. 34-B, § 3863.

involve a judicial actor in any capacity—do not constitute an "adjudication" or a "commitment" under Section 922(g)(4).

Much like this Court's discussion *supra* Part VI.D, the *Rehlander* court's statutory interpretation of Section 922(g)(4) was in part due to its application of the canon of constitutional avoidance. *Id.* at 47. Prior to the United States Supreme Court's decision in *Heller*, the First Circuit had interpreted Section 922(g)(4) to apply to those subject to a temporary hospitalization under Section 3863. *See United States v. Chamberlain*, 159 F.3d 656 (1st Cir. 1998). However, post-*Heller*, the First Circuit concluded that Mr. Small and Mr. Rehlander's Second Amendment "claim is sufficiently powerful that the doctrine of constitutional avoidance requires us to revisit our prior interpretation of section 922(g)(4)," *Rehlander*, 666 F.3d at 47, and hold that Section 3863 proceedings do not constitute an "adjudication" or a "commitment" warranting a Section 922(g)(4) restriction of a person's ability to possess firearms. *Id.* at 50.

In coming to this conclusion, the First Circuit explained that Section 3863—much like Section 302 of the MHPA—never uses the word "commitment" and that it features *ex parte* procedures. *See id.* at 47-48. The First Circuit felt obliged to apply the canon of constitutional avoidance because the *Heller*-recognized right to bears arms "is no longer something that can be withdrawn by government on a permanent and irrevocable basis without due process" and "a permanent or prolonged loss of a constitutional liberty or property interest [ordinarily requires] an adjudicatory hearing, including a right to offer and test evidence if facts are in dispute." *Id.* at 48. The *Rehlander* court even stated, "[i]t is evidently doubtful that a section 3863 commitment provides the necessary process for a permanent deprivation." *Id.*

The First Circuit observed that under the Government's interpretation, Section 922(g)(4) provides for a *permanent* suspension of the right to bear arms, rather than a temporary suspension—an imbalanced result if the catalyst for the suspension was a brief emergency hospitalization without a hearing, the right to counsel, a judicial decision-maker, or the opportunity to present evidence. *Id.* at 48-49. As a theoretical matter, Section 922(g)(4) restriction could be lifted via state or federal proceedings. *Id.* However, in both Maine and Pennsylvania, these avenues of relief are wholly illusory.

The Attorney General can theoretically grant relief from firearms restrictions under 18 U.S.C. § 925(c), but Congress has prohibited actions on such petitions since 1992. *See Logan v. United States*, 553 U.S. 23, 28 n.1 (2007); *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 682 (6th Cir. 2016) (en banc); *Rehlander*, 666 F.3d at 49. Congress has also allowed states to develop a "relief from disabilities program." *See* NIAA, Pub. L. No. 110-180, 122 Stat. 2559 (2008) (codified at 18 U.S.C. § 922 note); *Rehlander*, 666 F.3d at 49. However, Maine and Pennsylvania's programs have not been approved by the Attorney General and, thus, provide no relief for the purposes of federal law. *See id.*; *Keyes*, 195 F. Supp. 3d at 711 (explaining that 18 Pa. Stat. and Cons. Stat. Ann. § 6105(f)(1), Pennsylvania's relief program, "fails to satisfy the requirements for a state program to be considered 'implemented' under § 105 [of the NIAA] . . . [because § 105] requires an independent determination by a reviewing court that the granting of relief from a firearms disability would not be contrary to public interest"—a requirement which § 6105(f)(1) lacks); *Jefferies*, 2017 WL 4411044, at *11 n.108 (agreeing with *Keyes*).

As stated *supra*, this Court does not now offer any opinion on the merits of the constitutional claims raised by the parties or the specific holdings of *Keyes*, *Jefferies*, *Beers*, or

*Simpson.* *See* note 18. However, like the *Rehlander* court, this Court recognizes the seriousness of these constitutional issues and that the canon of constitutional avoidance and this Court's statutory interpretation of Section 922(g)(4) prompts this Court to avoid these serious constitutional issues because an interpretation of Section 922(g)(4) is sufficient to resolve the instant matter.

## VII. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (ECF No. 36) is **GRANTED** only as to the inapplicability of the restrictions of Section 922(g)(4) to Mr. Franklin. Otherwise, the parties' cross-motions for summary judgment (ECF Nos. 31, 36) are **DENIED AS MOOT** at this time.

In sum, Mr. Franklin's brief "involuntary emergency examination and treatment" pursuant to Section 302 of the MPHA does not give rise to a restriction under Section 902(g)(4) because Mr. Franklin was not "adjudicated as a mental defective" or "committed to a mental institution." 18 U.S.C. § 902(g)(4). The Court offers no opinion as to the underlying constitutional claims and does not question whether Section 302 of the MHPA can require a person to undergo an involuntary emergency examination and treatment.[21] Rather, the Court merely holds that the minimal procedures of Section 302 of the MHPA do not meet the requirements of Section 922(g)(4) for imposing a restriction on a person's ability to acquire, possess, or use a firearm.

---

[21] To the contrary, Third Circuit precedents suggest that Section 302 of the MHPA's lack of a provision for notice and a hearing may be reasonable and not violate due process for the purposes of requiring an involuntary emergency examination because Section 302 of the MHPA was created to deal with emergencies and continues only for a short period of time. *See Benn v. Universal Health System, Inc.,* 371 F.3d 165, 174 (3d Cir. 2004); *Doby v. DeCrescenzo,* 171 F.3d 858, 870 (3d Cir. 1999); *see also Project Release v. Prevost,* 722 F.2d 960, 974 (2d Cir. 1983); *Covell v. Smith,* Civil Action No. 95-501, 1996 WL 750033 (E.D. Pa. Dec. 30, 1996); *Luna v. Van Zandt,* 554 F. Supp. 68, 76 (S.D. Tex. 1982)

Section 922(g)(4) features specific requirements that must be satisfied to trigger the imposition of a firearms disability. *See* 18 U.S.C. § 902(g)(4). The procedures provided for by Section 302 of the MHPA and the processes applied to Mr. Franklin on September 22, 2002 simply do not meet those specific requirements. Although the provisions of Section 302 of the MHPA may be sufficient to justify an involuntary emergency examination and treatment,[22] the Court is not persuaded that these non-adversarial, *ex parte* procedures without notice, a hearing, the opportunity to present evidence, or a judicial or quasi-judicial actor constitute an "adjudication" for the purposes of Section 902(g)(4), nor that a 120-hour-maximum "involuntary emergency examination and treatment" constitutes a "commitment to a mental institution." *See* 18 U.S.C. § 902(g)(4).

Thus, under the undisputed material facts presented to this Court, Section 922(g)(4) is not implicated, and Mr. Franklin's rights are unaffected by Section 922(g)(4).

A corresponding order follows.

---

[22] *See supra* note 21.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ALTON C. FRANKLIN,                          )       Case No. 3:16-cv-36
                                            )
              Plaintiff,                    )       JUDGE KIM R. GIBSON
                                            )
       v.                                   )
                                            )
JEFFERSON B. SESSIONS, III, *Attorney*      )
*General of the United States*; THOMAS E.   )
BRANDON, *Acting Director, Bureau of*       )
*Alcohol, Tobacco, Firearms, and*           )
*Explosives*; CHRISTOPHER A. WRAY,          )
*Director of the Federal Bureau of*         )
*Investigation*; and THE UNITED STATES      )
OF AMERICA,                                 )
                                            )
              Defendants.                   )

## ORDER

NOW, this 21st day of December 2017, upon consideration of the parties' cross-motions

for summary judgment (ECF Nos. 31, 36) and for the reasons set forth in the Memorandum

Opinion accompanying this Order, it is **HEREBY ORDERED** that:

1.  Plaintiff's Motion for Summary Judgment (ECF No. 36) is **GRANTED** only as to the

    inapplicability of the restrictions of Section 922(g)(4) to Plaintiff.  Judgment is entered

    in Plaintiff's favor to that extent.

2.  In all other regards, the parties' cross-motions for summary judgment (ECF Nos. 31,

    36) are **DENIED AS MOOT** at this time.

3.  18 U.S.C. § 922(g)(4) is not implicated by Plaintiff's involuntary emergency treatment

    on September 22, 2002 pursuant to 50 Pa. Stat. and Cons. Stat. Ann. § 7302 and, as it

pertains to that event, Plaintiff's ability to acquire, possess, and use firearms and/or ammunition is unaffected.

4. Defendants, their officers, agents, servants, employee, and all persons in active concert or participation with them who receive actual notice of this Order are **ENJOINED** from enforcing 18 U.S.C. § 922(g)(4) against Plaintiff based on his involuntary emergency treatment on September 22, 2002.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**